UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
RUTLAND DIVISION

U.S. DISTRIC COURT
DISTRICT OF VERMONT
FILED

2021 AUG 17 PM 4: 28

CLERK

BY _____

|  |  |  |
|---|---|---|
| JOSEPH WILSON RODNEY, JR. and ROSEMARIE SIBLEY, Individually and on behalf of all others similarly situated, | § § § § § | Civil Action No. 2: 21-CV-196 Kjd |
|  | § |  |
| *Plaintiffs*, | § § | JURY TRIAL DEMANDED |
|  | § |  |
| v. | § § | |
|  | § | COLLECTIVE ACTION |
| CASELLA WASTE SYSTEMS, INC. | § | PURSUANT TO 29 U.S.C. § 216(b) |
|  | § |  |
| *Defendant.* | § | FRCP 23 CLASS ACTION |

## ORIGINAL COLLECTIVE / CLASS ACTION COMPLAINT

Plaintiffs Joseph Wilson Rodney, Jr. and Rosemarie Sibley bring this action individually and

on behalf of all current and former non-exempt Waste Disposal Drivers (hereinafter "Plaintiffs and

the Putative Class Members") who worked for Casella Waste Systems, Inc. ("Defendant" or "Casella")

at any time from during the relevant statutes of limitations through the final disposition of this matter,

to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions

of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b)

("FLSA"), the Maine Employment Practices Act, Revised Statute of Maine § 629 (26 M.R.S.A. § 629);

the Maine Minimum Wage and Overtime law (26 M.R.S.A. §§ 629, 664) (collectively, the "Maine

Acts"), and the Vermont Wage and Hour Statute ("VWHS"). *See* VT. STAT. ANN. TIT. 21, § 341 *et seq.*

Plaintiffs' FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29

U.S.C. § 216(b), while their respective state-law claims are asserted as class actions under Federal Rule

of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiffs' own

conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1.    This lawsuit includes a collective action to recover overtime wages, liquidated damages and other applicable penalties brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and class actions pursuant to the state laws of Maine and Vermont under FED. R. CIV. P. 23 to recover unpaid straight time, overtime wages, and other applicable penalties.

2.    Plaintiffs and the Putative Class Members are those persons who are current and former non-exempt employees of Casella who have worked as Waste Disposal Drivers and were responsible for hauling waste and garbage to the appropriate facilities—such as landfill and transfer facilities—throughout the United States at any time during the relevant statutes of limitations through the final disposition of this matter.

3.    Plaintiffs and the Putative Class Members routinely worked (and continue to work) in excess of forty (40) hours per workweek.

4.    During the relevant time period(s), Casella has knowingly and deliberately failed to compensate Plaintiffs and the Putative Class Members for all hours worked in excess of forty each week on a routine and regular basis.

5.    Specifically, Casella's regular practice— including during weeks when Plaintiffs and the Putative Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to automatically deduct a 30-minute meal-period from Plaintiffs and the Putative Class Members' daily time even though they regularly worked (and continue to work) "off-the-clock" through their respective meal-period break(s).

6.    Casella also fails to compensate Plaintiffs and the Putative Class Members for all hours spent performing mandatory pre-trip and post-trip vehicle inspections each day.

7.      The effect of Casella's practice was (and is) that all time worked by Plaintiffs and the Putative Class Members was not (and is not) counted and paid—thus, Casella has failed to properly compensate Plaintiffs and the Putative Class Members for all of their hours worked and resultingly failed to properly calculate Plaintiffs and the Putative Class Members' overtime under the FLSA and the relevant state laws.

8.      Plaintiffs and the Putative Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA or any relevant state laws.

9.      Plaintiffs and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time, overtime, liquidated damages, and other damages owed under state law.

10.     Plaintiffs pray that all similarly situated workers be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

11.     Plaintiffs also pray that the Rule 23 classes are certified as defined herein, that Plaintiff Rodney designated herein be named as the Class Representatives of the Maine Class, and that Plaintiff Sibley designated herein be named as the Class Representative of the Vermont Class.

## II.
## THE PARTIES

12.     Plaintiff Joseph Wilson Rodney, Jr. ("Rodney") was employed by Casella during the relevant time period. Plaintiff Rodney did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

---

[1] The written consent of Joseph Wilson Rodney, Jr. is attached hereto as Exhibit "A."

13.    Plaintiff Rosemarie Sibley ("Sibley") was employed by Casella during the relevant time period. Plaintiff Sibley did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

14.    The FLSA Collective Members are those current and former non-exempt Waste Disposal Drivers who were employed by Casella, anywhere in the United States and at any time from August 17, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Rodney worked and was paid.

15.    The Maine Class Members are those current and former non-exempt Waste Disposal Drivers who were employed by Casella, anywhere in the State of Maine, at any time from August 17, 2015 through the final disposition of this matter, have been subjected to the same illegal pay system under which Plaintiff Rodney worked and was paid.

16.    The Vermont Class Members are those current and former non-exempt Waste Disposal Drivers who were employed by Casella, anywhere in the State of Vermont, at any time from August 17, 2019 through the final disposition of this matter, have been subjected to the same illegal pay system under which Plaintiff Sibley worked and was paid.

17.    Defendant Casella Waste Systems, Inc. is a domestic corporation, licensed to and doing business in Vermont, and may be served through its registered agent for service of process: **C T Corporation System, 17 G W Tatro Dr., Jeffersonville, VT, 05464.**

### III.
### JURISDICTION & VENUE

18.    This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

---

[2] The written consent of Rosemarie Sibley is attached hereto as Exhibit "B."

19.    This Court has supplemental jurisdiction over the state law claims pursuant to 29 U.S.C. §1367.

20.    This Court has personal jurisdiction over Casella because the cause of action arose within this district as a result of Casella's conduct within this District.

21.    Venue is proper in the District of Vermont because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

22.    Specifically, Casella's corporate headquarters are located in Rutland, Vermont, which is located within this District.

23.    Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

24.    Casella, operating as a single business enterprise, is a full-service solid waste company providing waste collection and disposal services to commercial, industrial and residential customers in the states of Vermont, Massachusetts, Maine, New Hampshire, Pennsylvania, and New York.[3]

25.    Casella operates through multiple affiliated and subsidiary entities that are owned and operated by the same core individuals and out of the same principal office.

26.    Plaintiffs and the Putative Class Members are subjected to the same management throughout Casella, regardless of the name of the subsidiary entity on their paychecks.

27.    Casella maintains centralized control of all labor relations that impact Plaintiffs and the Putative Class Members and makes all determinations relevant to Plaintiffs and the Putative Class Members' employment.

28.    Casella, and its affiliates and subsidiaries, perform the same waste disposal services, utilize the same equipment, and operate under the Casella business name.

---

[3] *See* https://www.casella.com/our-locations/hauling

29.    Casella and its subsidiaries are subject to common ownership and financial control.

30.    Plaintiff Rodney worked for Casella as a non-exempt Waste Disposal Driver in Maine from approximately August 2018 until December 2019.

31.    Plaintiff Rodney was responsible for the collection, transportation, and disposal of residential and commercial waste on behalf of Casella's customers.

32.    Plaintiff Sibley worked for Casella as a non-exempt Waste Disposal Driver in Vermont from approximately July 2018 until August 2021.

33.    Plaintiff Sibley was responsible for the collection, transportation, and disposal of residential waste on behalf of Casella's customers.

### Plaintiffs and Putative Class Members are Similarly Situated

34.    To provide its services, Casella employed (and continues to employ) numerous Waste Disposal Drivers—including Plaintiffs and the individuals that make up the putative or potential class. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work throughout the United States.

35.    Plaintiffs and the Putative Class Members are (or were) non-exempt Waste Disposal Drivers employed by Casella for the relevant time-period preceding the filing of this Complaint through the final disposition of this matter.

36.    Moreover, Plaintiffs and the Putative Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Casella resulting in the complained of FLSA and relevant state law violations.

### Casella's 30-Minute Meal Period Violation

37.    Casella has a policy that Waste Disposal Drivers, such as Plaintiffs and the Putative Class Members, automatically have thirty (30) minutes per day for a meal period deducted from his or her hours worked.

38.     Casella was (and continues to be) aware that Plaintiffs and the Putative Class Members regularly worked (and continue to work) through their 30-minute meal periods without pay in violation of the FLSA.

39.     When calculating Plaintiffs and the Putative Class Members' hours each workweek, Casella deducted (and continues to deduct) thirty (30) minutes from Plaintiffs and the Putative Class Members' daily on-the-clock hours in violation of the FLSA.

40.     In other words, for each 5-day workweek, Casella deducted (and continues to deduct) a minimum of 2.5 hours from each workweek's total "on-the-clock" hours. For a 6-day workweek, Casella deducted (and continues to deduct) a minimum of 3 hours from each workweek's total "on-the-clock" hours.

41.     Casella's systematic deduction of the 30-minute meal period from Plaintiffs and the Putative Class Members' "on-the-clock" time resulted (and continues to result) in Plaintiffs and the Putative Class Members working overtime hours for which they were (and are) not compensated at a rate not less than time and one-half as is required by the FLSA.

42.     Casella's systematic deduction of the 30-minute meal period from actual hours worked in excess of 40 hours per workweek deprived (and continues to deprive) Plaintiffs and the Putative Class Members of the required and proper amount of overtime pay in violation of the FLSA.

### *Casella Required Pre-Trip and Post-Trip Inspections Off-the-Clock*

43.     In addition, as part of their job responsibilities, Plaintiffs and the Putative Class Members have pre and post-trip vehicle inspections they are required to perform at the beginning and end of each work shift.

44.     Plaintiffs and the Putative Class Members' pre and post-trip inspections are integral and indispensable to their core job duties and therefore compensable under the FLSA.

45.     Plaintiffs and the Putative Class Members' pre and post-trip inspections are not *de minimis* in nature as each inspection takes approximately fifteen (15) minutes (or more) to complete.

46.     Plaintiffs and the Putative Class Members performed (and continue to perform) their pre-trip inspections "off-the-clock" and without pay.

47.     Casella knew, and at times, directed Plaintiffs and the Putative Class Members to perform their pre-trip inspections "off-the-clock" in violation of the FLSA.

48.     Specifically, Plaintiff Rodney was either clocked out by his supervisor or was told to clock out by his supervisor anytime he approached sixty (60) hours worked in any given workweek.

49.     Casella did not (and does not) compensate Plaintiffs and the Putative Class Members for performing their pre-trip inspections "off-the-clock."

50.     As a result of Casella's failure to compensate Plaintiffs and the Putative Class Members for performing work "off-the-clock," Plaintiffs and the Putative Class Members worked overtime hours for which they were not compensated.

51.     Casella's failure to compensate Plaintiffs and the Putative Class Members for their "off-the-clock" overtime hours violated (and continues to violate) the FLSA and relevant state law.

52.     Casella knew or should have known that it was miscalculating Plaintiffs and the Putative Class Members' regular rates of pay and that the proper amount of overtime compensation was not being paid to Plaintiffs and the Putative Class Members in violation of the FLSA.

53.     Casella knew or should have known that its failure to pay the correct amount of overtime to Plaintiffs and Putative Class Members would cause, did cause, and continues to cause financial injury to Plaintiffs and the Putative Class Members.

54.     Casella knew or should have known that causing and/or requiring Plaintiffs and the Putative Class Members to perform necessary work "off-the-clock" would cause, did cause, and continues to cause financial injury to Plaintiffs and the Putative Class Members.

55.      Casella's actions therefore constitute willful violations under the FLSA and were not made in good faith.

56.      Because Casella did not pay Plaintiffs and the Putative Class Members for all straight-time hours worked, Casella's pay policies and practices also violate the state laws of Maine and Vermont.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**(FLSA Collective Action Alleging Violations of 29 U.S.C. § 216(b))**

**A.      FLSA COVERAGE**

57.      All previous paragraphs are incorporated as though fully set forth herein.

58.      The FLSA Collective is defined as:

**ALL CURRENT AND FORMER WASTE DISPOSAL DRIVERS WHO WORKED FOR CASELLA WASTE SYSTEMS, INC., ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM AUGUST 17, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective" or "FLSA Collective Members").**

59.      At all times hereinafter mentioned, Casella has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

60.      At all times hereinafter mentioned, Casella has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

61.      At all times hereinafter mentioned, Casella has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise

has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

62.    Specifically, Casella operates on interstate highways, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

63.    During the respective periods of Plaintiffs and the FLSA Collective Members' employment by Casella, these individuals provided services for Casella that involved interstate commerce for purposes of the FLSA.

64.    In performing the operations described hereinabove, Plaintiffs and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

65.    Specifically, Plaintiffs and the FLSA Collective Members are (or were) non-exempt Waste Disposal Drivers who assisted Casella's customers throughout the United States. 29 U.S.C. § 203(j).

66.    At all times hereinafter mentioned, Plaintiffs and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

67.    The proposed class of similarly situated employees, i.e. FLSA collective members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 58.

68.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Casella.

**B.    FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

69.    Casella violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

70.    Moreover, Casella knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiffs and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

71.    Casella knew or should have known its pay practices were in violation of the FLSA.

72.    Casella is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

73.    Plaintiffs and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Casella to pay them according to the law.

74.    The decision and practice by Casella to not pay Plaintiffs and the FLSA Collective Members overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

75.    Accordingly, Plaintiffs and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**C.    COLLECTIVE ACTION ALLEGATIONS**

76.    All previous paragraphs are incorporated as though fully set forth herein.

77.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Casella's employees who are (or were) similarly situated to Plaintiffs with regard to the work they performed and the manner in which they were paid.

78.     Other similarly situated employees of Casella have been victimized by Casella's patterns, practices, and policies, which are in willful violation of the FLSA.

79.     The FLSA Collective Members are defined in Paragraph 58.

80.     Casella's failure to pay Plaintiffs and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Casella, and does not depend on the personal circumstances of Plaintiffs or the FLSA Collective Members.

81.     Thus, Plaintiffs' experiences are typical of the experiences of the FLSA Collective Members.

82.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

83.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

84.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

85.     Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Casella will retain the proceeds of its violations.

86.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

87.    Accordingly, the FLSA collective should be certified as defined in Paragraph 58.

### COUNT TWO
**(Class Action Alleging Violations of Maine Law)**

**A.    MAINE ACTS COVERAGE**

88.    All previous paragraphs are incorporated as though fully set forth herein.

89.    The Maine Acts Class is defined as:

**ALL CURRENT AND FORMER WASTE DISPOSAL DRIVERS WHO WORKED FOR CASELLA WASTE SYSTEMS, INC., IN THE STATE OF MAINE, AT ANY TIME FROM AUGUST 17, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Maine Acts Class" or "Maine Acts Class Members").**

90.    At all times hereinafter mentioned, Plaintiff Rodney and the Maine Acts Class members have been employees within the meaning of the Maine Acts. Me. Rev. Stat. Ann. § 663(3).

91.    Plaintiff Rodney and the Maine Acts Class Members were or have been employed by Casella since August 17, 2015, and have been covered employees entitled to the protections of the Maine Acts and were not exempt from the protections of the Maine Acts.

92.    The employer, Casella, is not exempt from paying all wages when they are due or from paying overtime benefits under the Maine Acts.

**B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE MAINE ACTS**

93.    All previous paragraphs are incorporated as though fully set forth herein.

94.    The Maine Acts require that employees, including Plaintiff Rodney and the Maine Acts Class Members receive "time and one-half" overtime premium compensation for hours worked over forty (40) per week.

95.    The Maine Acts require that Casella pay Plaintiff Rodney and the Maine Acts Class Members all wages, including unpaid overtime, at regular intervals not to exceed 16 days.

96.     Plaintiff Rodney and the Maine Acts Class Members were or have been employed by Casella since August 17, 2015, and have been covered employees entitled to the protections of the Maine Acts.

97.     Casella employed Plaintiff Rodney and the Maine Acts Class Members as defined and set forth in the Maine Acts.

98.     Plaintiff Rodney and other Maine Acts Class Members have not been exempt from receiving overtime benefits under the Maine Acts.

99.     Plaintiff Rodney and the Maine Acts Class Members worked more than forty (40) hours in workweeks during times relevant to this case, however, Casella violated the Maine Acts by failing to pay Plaintiff Rodney and other Maine Acts Class Members the correct amount of overtime for hours worked over 40 per week.

100.    Plaintiff Rodney and the Maine Acts Class Members were not paid all wages, including overtime wages at one and one-half times their regular rates within sixteen (16) days of performing the work.

101.    The wages of Plaintiff Rodney and the Maine Acts Class Members remain unpaid for more than sixteen (16) days beyond their regularly scheduled payday.

102.    Plaintiff Rodney and the Maine Acts Class Members have suffered damages and continue to suffer damages as a result of Casella's acts or omissions as described herein; though Casella is in possession and control of necessary documents and information from which Plaintiff Rodney would be able to precisely calculate damages

103.    In violating the Maine Acts, Casella acted willfully, without a good faith basis, and with reckless disregard of applicable Maine law.

104.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Maine Acts, is defined in Paragraph 89.

105.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Casella.

## C.    MAINE ACTS CLASS ALLEGATIONS

106.    All previous paragraphs are incorporated as though fully set forth herein.

107.    Plaintiff Rodney brings his Maine Acts claims as class actions pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Casella to work in Maine since August 17, 2015.

108.    Class action treatment of Plaintiff Rodney' Maine Acts claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

109.    The number of Maine Acts Members is so numerous that joinder of all class members is impracticable.

110.    Plaintiff Rodney is a member of the Maine Acts Class, his claims are typical of the claims of other Maine Acts Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

111.    Plaintiff Rodney's claims share common questions of law and fact with the claims of the Main Acts Class Members.

112.    Plaintiff Rodney and his counsel will fairly and adequately represent the Maine Acts Class Members and their interests.

113.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

114.    Accordingly, the Maine Acts Class should be certified as defined in Paragraph 89.

<u>COUNT THREE</u>
**(Class Action Alleging Violations of the VWHS)**

**A.     VWHS COVERAGE**

115.     All previous paragraphs are incorporated as though fully set forth herein.

116.     The Vermont Class is defined as:

**ALL CURRENT AND FORMER WASTE DISPOSAL DRIVERS WHO WORKED FOR CASELLA WASTE SYSTEMS, INC., IN THE STATE OF VERMONT, AT ANY TIME FROM AUGUST 17, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Vermont Class" or "Vermont Class Members").**

117.     At all times hereinafter mentioned, Plaintiff Sibley and the Vermont Class members have been employees within the meaning of the VWHS. *See* VT. STAT. ANN. TIT. 21, § 341(1).

118.     Plaintiff Sibley and the Vermont Class Members were or have been employed by Casella since August 17, 2019, and have been covered employees entitled to the protections of the VWHS and were not exempt from the protections of the VWHS.

119.     The employer, Casella, is not exempt from paying all wages when they are due under the VWHS.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE VWHS**

120.     All previous paragraphs are incorporated as though fully set forth herein.

121.     The VWHS requires that Casella pay Plaintiff Sibley and the Vermont Class Members all wages due, within six days after the close of the workweek. *See* VT. STAT. ANN. TIT. 21, § 342.

122.     Plaintiff Sibley and the Vermont Class Members were or have been employed by Casella since August 17, 2019, and have been covered employees entitled to the protections of the VWHS.

123.     Casella was the employer of Plaintiff Sibley and the Vermont Class Members as defined and set forth in the VWHS. *See* VT. STAT. ANN. TIT. 21, § 341(2).

124.    Plaintiff Sibley and other Vermont Class Members have not been exempt from receiving timely wages as required under the VWHS.

125.    Plaintiff Sibley and the Vermont Class Members were not paid all wages within six days of the close of their workweek.

126.    The wages of Plaintiff Sibley and the Vermont Class Members remain unpaid for more than six days beyond their regularly scheduled payday.

127.    Plaintiff Sibley and the Vermont Class Members have suffered damages and continue to suffer damages as a result of Casella's acts or omissions as described herein; though Casella is in possession and control of necessary documents and information from which Plaintiff Sibley would be able to precisely calculate damages

128.    Because Casella failed to pay all wages earned in a timely manner as required by the VWHS, Casella is liable for twice the value of the unpaid wages, and all costs and reasonable attorney's fees. *See* VT. STAT. ANN. TIT. 21, § 347.

129.    The proposed class of employees, i.e. putative class members sought to be certified pursuant to the VWHS, is defined in Paragraph 116.

130.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Casella.

## C.    VERMONT CLASS ALLEGATIONS

131.    All previous paragraphs are incorporated as though fully set forth herein.

132.    Plaintiff Sibley brings her VWHS claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Casella to work in Vermont since August 17, 2019.

133.    Class action treatment of Plaintiff Sibley's VWHS claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

134.    The number of Vermont Class Members is so numerous that joinder of all class members is impracticable.

135.    Plaintiff Sibley is a member of the Vermont Class, her claims are typical of the claims of other Vermont Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

136.    Plaintiff Sibley's claims share common questions of law and fact with the claims of the Vermont Class Members.

137.    Plaintiff Sibley and her counsel will fairly and adequately represent the Vermont Class Members and their interests.

138.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

139.    Accordingly, the Vermont Class should be certified as defined in Paragraph 116.

## VI.
## RELIEF SOUGHT

140.    Plaintiffs respectfully pray for judgment against Casella as follows:

a.    For an Order certifying the FLSA Collective as defined in Paragraph 58 and requiring Casella to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.    For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.    For an Order pursuant to Section 16(b) of the FLSA finding Casella liable for unpaid back wages due to Plaintiffs (and those FLSA Collective Members who have joined in the suit),

and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those FLSA Collective Members who have joined in the suit);

        d.      For an Order certifying the Maine Acts Class as defined in Paragraph 89 and naming Plaintiff Rodney as the Class Representative of the Maine Acts Class;

        e.      For an Order pursuant to Maine state law awarding Plaintiff Rodney and the Maine Acts Class Members unpaid wages, liquidated damages, and other damages allowed by law;

        f.      For an Order certifying the Vermont Class as defined in Paragraph 116 and naming Plaintiff Sibley as the Class Representative of the Vermont Class;

        g.      For an Order pursuant to Vermont state law awarding Plaintiff Sibley and the Vermont Class Members unpaid wages, liquidated damages, and other damages allowed by law;

        h.      For an Order awarding the costs of this action;

        i.      For an Order awarding attorneys' fees;

        j.      For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

        k.      For an Order awarding Plaintiffs service awards as permitted by law;

        l.      For an Order compelling the accounting of the books and records of Casella, at Casella's expense; and

        m.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:    August 17, 2021

Respectfully submitted,

TRISTAN CHRISTOPHER LARSON, ESQ.
**LARSON & GALLIVAN LAW, PLC**
128 Merchants Row, Suite 405
Rutland, Vermont 05701
(802) 779-9771
larson@larsongallivan.com


**ANDERSON ALEXANDER, PLLC**

**Clif Alexander** (*pro hac vice forthcoming*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (*pro hac vice forthcoming*)
Texas Bar No. 24045189
austin@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284


*Attorneys for Plaintiffs and the Putative*
*Class Members*