## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

JOSEPH WILSON RODNEY, JR.,
ROSEMARIE SIBLEY, and KENNETH
MESSOM, individually and on behalf of
all others similarly situated,

          Plaintiffs,

    v.                                Civil Action No. 2:21-cv-196

CASELLA WASTE SYSTEMS, INC.,

          Defendant.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12

Defendant Casella Waste Systems, Inc., by and through Dinse P.C., moves to dismiss Plaintiffs' First Amended Complaint for failure to state a claim and lack of supplemental jurisdiction over the state-law counts. Casella withdraws its pending Motion to Dismiss addressing Plaintiffs' now-defunct original Complaint and submits the following Memorandum of Law in support of this Motion.

## MEMORANDUM OF LAW

In lieu of responding to the substance of Casella's motion to dismiss, Plaintiffs elected to amend their Complaint. They have, however, squandered the opportunity, for the amended pleading fails to offer a basis to evade dismissal. Instead of curing the deficiencies in their original pleading, Plaintiffs' amendments seek to further expand the scope of this lawsuit. Closely tracking the original, the First Amended Complaint charges Casella with alleged violations of the federal Fair Labor

Standards Act ("FLSA") and state labor laws on behalf of putative classes of workers in Vermont and Maine, and now Massachusetts as well.  The amendments advance a new theory of FLSA liability based on non-discretionary bonuses and add a new Named Plaintiff and corresponding putative class of plaintiffs in Massachusetts. But in their haste to establish this case as a sweeping collective and class action spanning multiple states and hundreds of employees, Plaintiffs neglect to address the insufficiency of the individual allegations in support of their FLSA claims and the paucity of specific factual information to "nudge" any of their state-law "claims across the line from conceivable to plausible."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Due to these persistent failures, Casella submits that Plaintiffs' claims in the First Amended Complaint must be dismissed.

## I.     Allegations in the First Amended Complaint.

Plaintiffs were previously employed by Casella as Waste Disposal Drivers, a position they allege is not exempt from the FLSA's overtime requirements.  First Am. Compl. ("FAC") ¶ 2.  Plaintiff Rodney worked for Casella in Maine from August 2018 through December 2019, *id.* ¶¶ 34, 36; Plaintiff Sibley worked for Casella in Vermont from July 2018 through August 2021, *id.* ¶¶ 37, 39; and Plaintiff Messom worked for Casella in Massachusetts from January 2019 through June 2019.  *Id.* ¶¶ 40, 42.

In the FAC, Plaintiffs identify three policies which they allege give rise to FLSA liability and which they claim Casella applies to all Waste Disposal Drivers, regardless of their location.  Under the first policy, Casella automatically deducts a

30-minute meal break from each driver's daily time, *see id.* ¶ 5, even though "[m]ost drivers work through their meal break every day" due to the time required to complete their routes. *Id.* ¶ 52. This allegedly results in drivers "working overtime hours for which they" are not compensated. FAC ¶ 58. Plaintiffs contend that Waste Disposal Drivers complained about the auto-deduction policy to unidentified supervisors at "morning meetings." *Id.* ¶ 53. Pursuant to the second policy, Casella allegedly requires that drivers perform daily pre- and post-trip vehicle inspections, which take approximately 15 minutes each, off the clock. *See* FAC ¶¶ 61, 63-64. Under the third alleged policy, Casella purportedly paid Waste Disposal Drivers non-discretionary bonuses that it did not include in Drivers' regular rate of pay, leading to incorrect calculation of their overtime wages. *Id.* ¶¶ 69-71.

Plaintiffs allege that, through application of these policies, Casella willfully violated the FLSA by failing to compensate employees for all hours worked in excess of 40 per week at the required overtime rate. *See id.* ¶¶ 79-82. They also assert violations of the Maine and Massachusetts wage and hour laws, which parallel the FLSA, *see id.* ¶¶ 130, 154, as well as violations of Maine, Massachusetts, and Vermont statutes requiring that wages be paid within specified periods of time, *id.* ¶¶ 132, 155, 183, and a Massachusetts law mandating workers receive a thirty-minute meal break during each six-hour period of work. *See id.* ¶ 157.

## II.   Legal Standard.

Federal district courts take a "two-pronged approach" to evaluating the sufficiency of a complaint on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  At the first step, the Court accepts the complaint's allegations as true, excluding those "that are conclusory and thus not entitled to the assumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 680).  Turning to the remaining "well-pleaded" factual content of the complaint, at step two the Court must determine whether the accepted allegations "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  If the facts alleged do no more than suggest a "sheer possibility that a defendant has acted unlawfully," or indicate only "the mere possibility of misconduct," the claims lack the facial plausibility required to proceed. *Iqbal*, 556 U.S. at 678-79.  "[A] complaint that includes only 'an unadorned, the-defendant-unlawfully-harmed-me accusation,' or 'naked assertions devoid of further factual enhancement' does not meet the facial plausibility standard." *Saltis v. NuVasive*, No. 2:19-cv-89, 2020 WL 4689822, at *4 (D. Vt. Aug. 3, 2020) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks and brackets omitted).

## III.   Argument.

### A.      The Named Plaintiffs Have Failed to Allege Plausible FLSA Overtime Claims.

The standards governing FLSA overtime claims are well established: "[T]o state a prima facie case under FLSA, a plaintiff must produce sufficient evidence to establish that the employee has in fact performed work for which she was improperly compensated and produce sufficient evidence to show the amount and extent of that work 'as a matter of just and reasonable inference.'" *Connolly v. Smugglers' Notch Mgmt. Co.*, No. 2:09-CV-131, 2009 WL 3734123, at *2 (D. Vt. Nov.

5, 2009) (brackets omitted) (quoting *Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 67 (2d Cir. 1997)).  Accordingly, this Court has held that "a complaint under the FLSA adequately meets the minimal pleading standard if it: (1) denotes an employer-employee relationship; (2) establishes that employees were 'engaged in commerce;' and (3) approximately alleges the hours worked, for which wages were not received."[1] *Beaulieu v. Vermont,* No. 2:10-cv-00032, 2010 WL 3632460, at *4 (D. Vt. Aug. 5, 2010) (citing *Nichols v. Mahoney,* 608 F. Supp. 2d 526, 547-48 (S.D.N.Y. 2009) and *Zhong v. August August Corp.,* 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). Critically, "where the plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Zhong,* 498 F. Supp. 2d at 628.

Instead of meeting this clearly-established standard, Plaintiffs' FAC is drafted with a myopic focus on the purportedly class-wide nature of the FLSA claims raised. They now allege that "Casella usually scheduled its Waste Disposal Drivers, including Plaintiffs *and the Putative Class Members*, to work five to six days and 45-60 hours per week," and that "Plaintiffs *and the Putative Class Members* did usually work that many hours on-the-clock per week and were paid for their on-the-clock time." FAC ¶¶ 47-48 (emphases added).  They also represent that unnamed Waste Disposal Drivers "complained" about the meal deduction policy to unidentified

---

[1] For purposes of this motion only, Casella does not contest that it is an "employer" or that its employees are "employees" as those terms are defined by the FLSA. *See* 29 U.S.C. § 203(d)-(e).  It also does not presently contest that its employees are engaged in commerce within the meaning of the FLSA.

supervisors during morning meetings with unspecified dates or locations, without further detail from any Named Plaintiff's personal knowledge or experience.  *Id.* ¶ 53.  These new allegations fall short of stating a plausible FLSA overtime claim on behalf of any of the three Named Plaintiffs.

Second Circuit caselaw is unanimous in holding that "allegations that an employee 'regularly worked' more than forty hours per week are merely legal conclusions that constitute 'little more than a paraphrase of the statute' and cannot, standing alone, establish a plausible claim."  *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) (quoting *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013)).  Instead, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work *in a given workweek* as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (emphasis added); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("[A]bsent any allegation that Plaintiffs were scheduled to work forty hours in a given week, these allegations do not state a plausible claim for such relief.").  The law thus requires a plaintiff to identify at least one specific instance of allegedly unpaid overtime to state a viable FLSA claim.

The Third Circuit Court of Appeals has adopted the Second Circuit's standard and applied it in a case asserting FLSA claims much like those at issue here.  In *Davis v. Abington Memorial Hospital*, the court affirmed dismissal of the plaintiffs' FLSA overtime claims on the basis that "[n]one of the named plaintiffs ha[d] alleged

a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours." 765 F.3d 236, 243 (3d Cir. 2014).

Citing *Lundy* and *Nakahata*, the court explained:

> Of the four named plaintiffs who allege that they "typically" worked at least forty hours per week, in addition to extra hours "frequently" worked during meal breaks or outside of their scheduled shifts . . . none indicates that she in fact worked extra hours *during* a typical (that is, a forty-hour) week. Their allegations are therefore insufficient. *See, e.g., Lundy,* 711 F.3d at 114 ("[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." (emphases added)); *see also Nakahata,* 723 F.3d at 201 (citing *Lundy* and holding that "[p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week").
>
> In reaching this conclusion, we do not hold that a plaintiff must identify the exact dates and times that she worked overtime. For instance, a plaintiff's claim that she "typically" worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice. But no such allegation is present in this case.

*Id.* (footnote omitted).

The same is true of Plaintiffs' FAC. The sole allegation in the entire pleading which even arguably satisfies the standard is the representation that during one week in August 2021, Plaintiff Sibley worked 52.53 hours, "but—due to Casella's meal break deduction—was only paid for 50.03 hours of work." FAC ¶ 59. Even then, the FAC fails to allege that this purported discrepancy resulted from Plaintiff Sibley working through her lunch break during each shift of the week in question, or what work activities she allegedly performed that time. Moreover, to the extent that

Plaintiffs attribute the discrepancy to "Casella's meal break deduction" only, this allegation undermines their claim that Waste Disposal Drivers also perform daily vehicle inspections "off-the-clock" for which they are not paid. *See* FAC ¶ 68. Indeed, the FAC fails to offer a single example of a week in which any Named Plaintiff performed off-the-clock inspections and did not receive the correct amount of overtime pay as a result.

The FAC also lacks *any* specific allegation that Plaintiff Rodney or Plaintiff Messom worked forty hours in a given workweek and also worked uncompensated time in that same workweek. *See Davis*, 765 F.3d at 243. As a result, it fails to provide the necessary factual support for, at a minimum, any FLSA overtime claims on behalf of Plaintiffs Rodney and Messom. *See Lusk v. Serve U Brands, Inc.*, No. 6:17-cv-06451-MAT, 2018 WL 826857, at *3 (W.D.N.Y. Feb. 12, 2018) (citing *Dejesus*, 726 F.3d at 89 and noting that "[t]he Second Circuit has expressly held that an allegation that a plaintiff worked more than 40 hours in 'some or all weeks' without being paid an appropriate rate of compensation does not meet the plausibility standard").

Plaintiffs will no doubt argue that because they allege Casella's supposed company-wide policies had the same effect on all Waste Disposal Drivers regardless of their location, the general, "classwide" nature of their pleading is adequate to assert that every Named and potential opt-in Plaintiff has a plausible overtime claim. Not so. "Simply because FLSA collective actions have the potential to include thousands of members does not relieve each named plaintiff of its individual burden

to state a legal claim for relief.  Since named plaintiffs represent the proposed opt-in plaintiffs' interests, it necessarily follows that *each* named plaintiff must establish that it has suffered a FLSA violation." *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 567 (E.D. Pa. 2017) (footnote omitted) (emphasis added); *see also Robledo v. Number 9 Parfume Leasehold*, No. 12 Civ. 3579, 2013 WL 1718917, at *4 (S.D.N.Y. Apr. 9, 2013) (denying leave to add named plaintiff where proposed amended complaint "completely failed" to show she had "a basis for individual relief").  At the pleading stage, this case "is not yet a collective action," as Plaintiffs have "merely filed a complaint" and have not yet moved for conditional collective action certification.  *Rosario*, 247 F. Supp. 3d at 567 n.7.  At this juncture, the Named Plaintiffs cannot rest their claims on broad assertions that every Waste Disposal Driver at Casella is similarly situated.  To the contrary, they must state plausible claims in their individual capacities before questions about companywide issues become pertinent, and they have failed to do so in the FAC.

### B.   The Named Plaintiffs' Non-Discretionary Bonus Claims Are Similarly Deficient.

In an effort to open a new front alongside their overtime claims, Plaintiffs have added a second theory of purported FLSA liability to the FAC based on Casella's alleged payment of certain "non-discretionary bonuses based on different metrics[,] such as a driver's safety records and their vaccination status."  FAC ¶ 71.  They assert that "these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiffs' regular rates of pay before any and all overtime multipliers were applied," *id.* ¶ 77, but that Casella allegedly

failed to include them, *see id.* ¶ 71, "thereby causing a miscalculation of the regular rate of pay for purposes of overtime compensation." *Id.* ¶ 70. This version of Plaintiffs' FLSA claim, which has been incorporated into Count One of the FAC, fares no better than their overtime claims due to their continued failure to state plausible claims on an individual basis.

Plaintiffs' approach to pleading their non-discretionary bonus claim is essentially identical to the manner of pleading their overtime claim. They include a single "example" regarding Plaintiff Sibley, but fail to provide *any* further detail with respect to Named Plaintiffs Rodney and Messom beyond vague and conclusory allegations about "Plaintiffs and the Putative Class Members." *See id.* ¶ 72 (alleging that Plaintiff Sibley received a "safety bonus" of $212.44 in March 2021 "because she did not have any moving violations during the preceding four-month period"); *id.* ¶¶ 69-70 (alleging, with no further factual support, that all purported Plaintiffs received non-discretionary bonuses that were not included in their regular rates of pay).

First, the allegation that Plaintiff Sibley received a bonus may plausibly state one element of a rate-of-pay claim, but the FAC offers nothing more than the bare assertion that "the non-discretionary bonus was not included in [Plaintiff Sibley's] regular rate and her overtime pay was improperly calculated" to allege that an FLSA violation actually occurred. FAC ¶ 72. An essential element of Plaintiff Sibley's claim thus rests on nothing more than a "mere conclusory statement[]" that fails to satisfy the plausibility standard. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at

555).

Moreover, the absence of any allegation that Plaintiff Rodney or Plaintiff Messom received even a single non-discretionary bonus precludes them from stating plausible claims on that basis. Without that information, the FAC provides "*zero factual allegations*" establishing that either Plaintiff Rodney or Plaintiff Messom ever earned the relevant type of bonus, "let alone that [Casella] failed to take into consideration" such entitlement "when calculating their overtime pay." *See Campbell v. City of New York*, No. 16-cv-08719, 2017 WL 3206332, at *4 (S.D.N.Y. July 25, 2017) (emphasis in original) (dismissing rate claims as to three named plaintiffs because complaint failed to plausibly allege they were entitled to higher pay rate, or that City failed to appropriately calculate their overtime).

These pleading inadequacies cannot be excused by Plaintiffs claiming they do not have access to Casella's records. "[A]s the Second Circuit stated in *Lundy*, [Plaintiffs'] own 'memory and experience' ought to enable [them] to state a plausible claim" by stating whether, and at least approximately when and why, they received non-discretionary bonuses. *Hinckley v. Seagate Hosp. Grp., LLC*, No. 16-CV-6118 CJS, 2016 WL 6524314, at *5 (W.D.N.Y. Nov. 3, 2016) (quoting *Lundy*, 711 F.3d at 114). Similarly, Plaintiff Sibley should be able to allege some information regarding her regular hourly rate and the purportedly incorrect overtime rate of pay she received. If she cannot, she lacks—and has correspondingly failed to provide to the Court—a factual basis to conclude that she was not compensated at the appropriate overtime rate based on receipt of the bonus alleged in the FAC.

In short, the allegations in the FAC are geared towards advancing the theory that Casella miscalculated overtime rates for *all* Waste Disposal Drivers who received non-discretionary bonuses, overlooking and failing to provide the critical foundational facts required to state a plausible claim on behalf of the Named Plaintiffs. Because each Named Plaintiff must satisfy his or her burden of pleading as an individual before consideration of collective action issues is appropriate, the non-discretionary bonus claim, like the other FLSA overtime claims, must be dismissed.

### C. Plaintiffs' Conclusory Allegations of Willfulness Fail to Support a Three-Year Statute of Limitations.

Even if Plaintiffs had alleged facts to support a plausible claim for relief under the FLSA—which they have not—their allegations are insufficient to justify application of a three-year statute of limitations. An extended three-year statute of limitations applies only to *willful* violations of the FLSA, and Plaintiffs' conclusory allegations fail to plausibly plead this intent element.[2] Accordingly, the Court should reject Plaintiffs' effort to define their putative collective action class to include all Waste Disposal Drivers employed between August 2018 and the resolution of this case and dismiss the FLSA claim to the extent Plaintiffs seek to apply it to facts outside of the two-year statute of limitations. *See* FAC ¶¶ 82, 85.

---

[2] Because Plaintiffs have not yet sought conditional collective action certification, this motion does not address those issues. Nonetheless, the statute of limitations is an affirmative defense appropriate for discussion on a Rule 12(b)(6) motion to dismiss. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (noting, with respect to statute of limitations, "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint") (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

In general, an action for unpaid overtime under the FLSA "may be commenced within two years after the cause of action accrued." 29 U.S.C. § 255(a). The statute of limitations may be extended to three years, but only in cases involving "a willful violation." *Id.* And as the Second Circuit recently held, "[u]nder [the *Iqbal-Twombly*] framework, a court need not accept as true a plaintiff's conclusory allegation that a defendant willfully violated the FLSA," just as it is not bound to take other conclusory assertions as true on a motion to dismiss. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021). Thus, plaintiffs must "plausibly allege willfulness to secure the benefit of the three-year exception at the pleadings stage." *Id.* at 320. A willful violation occurs when an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA. *Id.* at 324 (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)).

Plaintiffs' formulaic and conclusory pleading fails to satisfy this standard. They assert that Casella "knew or recklessly disregarded" that its policies allegedly resulted in off-the-clock work, miscalculation of pay rates, and failure to "pay the correct amount of overtime" in violation of the FLSA, rendering its actions willful, FAC ¶¶ 78-79, 81. However, the FAC contains no plausible allegations regarding knowledge or reckless disregard. Although Plaintiffs broadly claim, without a single identifying detail as to time, place, or persons involved, that some Waste Disposal Drivers complained about Casella's alleged meal deduction policy, none of the Named Plaintiffs personally claims to have raised concerns about meal deductions or

any other alleged violation with his or her supervisor.  *See* FAC ¶ 53.

Plaintiffs' other meager efforts to attribute knowledge to Casella also fail. They allege that "some Casella supervisors instructed Plaintiffs and the Putative Class Members to eat while waiting in line at a landfill[,]" while other supervisors allegedly "told Plaintiffs and the Putative Class Members to work through their meal break." *Id.* ¶ 54.  If any of these allegations are based on the Named Plaintiffs' personal knowledge, they should be able to provide the names of the supervisors in question, and describe when such statements were allegedly made.  Likewise, the FAC alleges that Plaintiff Rodney "was either clocked out by his supervisor or was told to clock out by his supervisor anytime he approached sixty (60) hours worked in any given workweek." *Id.* ¶ 66.  The supervisor in question is not named, nor does Plaintiff Rodney identify a week or weeks in which this allegedly occurred. Furthermore, Plaintiffs themselves note that Waste Disposal Drivers "may be subject" to federal regulations requiring them to take an off-period after driving 60 hours in a week, thus providing an alternative rationale for why a supervisor might instruct a driver to stop work at that point that has nothing to do with avoiding overtime payment.  FAC ¶ 47 n.5.  None of these threadbare, vague allegations plausibly alleges statements or conduct by Casella that indicate awareness of or disregard for the supposedly problematic nature of its practices.  *See Jang v. Trustees of St. Johnsbury Acad.*, 331 F. Supp. 3d 312, 351 (D. Vt. 2018) (rejecting plaintiff's "conclusory allegations" of "willful, wanton, or reckless behavior without pointing to any facts . . . that [the] Court could accept as plausibly establishing

fault").

In a further effort to bolster their tenuous charge of willfulness, Plaintiffs also allege that the court should infer intent or reckless disregard from the fact that Casella is, in their words, "a large, wealthy, and sophisticated company" while Plaintiffs "are (and were) unsophisticated laborers."  FAC ¶¶ 103-104.  However, those claims in no way support a reasonable inference that any violation was willful. "The argument that employers are sophisticated while employees are not could be made in almost any FLSA case and does not show willfulness."  *Robinson v. RWLS, LLC*, No. SA-16-CA-00201-OLG, 2016 WL 9308422, at *5 (W.D. Tex. Aug. 11, 2016), *report and recommendation adopted*, 2016 WL 9308525 (Sept. 16, 2016).[3]

The FAC thus supports an inference, at most, that Casella acted "unreasonably, but not recklessly, in determining its legal obligation," in which case "its action should not be considered willful."  *Whiteside*, 995 F.3d at 324 (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)).  As Plaintiffs have not plausibly alleged any willful conduct by Casella, the FLSA's standard two-year statute of limitations would apply to their claim if it were to move forward.

### D.     The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiffs' State-Law Claims.

It is well established that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."

---

[3] Plaintiffs' counsel served as co-counsel for plaintiffs in *Robinson* and therefore had reason to know that claims as to the size and sophistication of the employer do not suffice to carry the burden of alleging willfulness.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Because Plaintiffs' FLSA claim warrants dismissal and the balance of pertinent factors weighs against retaining jurisdiction over their state-law claims, the Court should decline supplemental jurisdiction and dismiss the remainder of the FAC.

Section 1367 provides federal district courts with supplemental jurisdiction over claims "that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a).  Courts have discretion to "decline to exercise supplemental jurisdiction" over related claims in certain circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  Even if the statutory prerequisites for discretion are met, the court must also analyze whether the exercise of supplemental jurisdiction would "promote the values" of "economy, convenience, fairness, and comity" (the so-called *Gibbs* factors).  *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)).  This analysis "'usually' point[s] toward a declination" of supplemental jurisdiction "[o]nce all federal claims have been dismissed."  *Lundy*, 711 F.3d at 118 (citing *Cohill*, 484 U.S. at 350 n.7).

Plaintiffs' FLSA claim is the only federal-law claim alleged in the FAC, and they assert no basis for jurisdiction over their state-law claims other than § 1367.  *See* FAC ¶¶ 22-23.  The FAC lacks sufficient factual content to enable the Court to determine the relationship (or lack thereof) between Plaintiffs' federal and state-law claims.  But even assuming *arguendo* that Plaintiffs' state-law claims shared a

common nucleus of operative fact with their federal claim, once the FLSA claim is properly dismissed, no claims over which this Court has original jurisdiction would remain. Without that federal anchor claim, the four *Gibbs* factors do not support the exercise of supplemental jurisdiction.

When considering the first *Gibbs* factor, judicial economy, courts take into account "their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation[.]" *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013). These considerations do not merit supplemental jurisdiction here. This case is in its earliest stages, with no discovery completed. There are just four claims, all of which are deficiently pled and subject to dismissal. Economy therefore would not be served through the exercise of supplemental jurisdiction. *See Catzin*, 899 F.3d at 83 (observing that supplemental jurisdiction may be appropriate for "long-pending cases" in which "discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial" (citation omitted)).

"In weighing convenience, courts ask whether the case is easily resolvable and, if it is, whether it is more appropriate to resolve the case than decline to exercise jurisdiction." *Chenensky*, 942 F. Supp. 2d at 392. While Plaintiffs' claims as currently pled are "easily resolvable" in favor of Casella as explained herein, it is difficult to predict how the merits of those claims might develop if the case proceeds. *Id.* A full and final resolution of Plaintiffs' claim therefore remains remote, at least until the defects in their FAC are addressed, and there is little convenience benefit

17

to be gained from federal supplemental jurisdiction over their state-law claims.

The fairness factor entails "questions of equity": whether the parties will be prejudiced if the Court declines jurisdiction and, if so, "are the parties responsible for any such prejudice?" *Chenensky*, 942 F. Supp. 2d at 392.  Plaintiffs stand to suffer no unfair prejudice here.  There is no barrier that prevents them from pursuing all of their claims in state court upon dismissal.  Furthermore, if Plaintiffs suffer any prejudice in having to replead their claims before this Court or re-file them in another jurisdiction, that prejudice results exclusively from their own inadequate pleading efforts.  As such, no fairness concerns militate in favor of supplemental jurisdiction.

The final *Gibbs* factor, comity, goes to "the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *Chenensky*, 942 F. Supp. 2d at 392 (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).  The Second Circuit has instructed that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Gibbs*, 388 U.S. at 726).  Following this rule, the state courts of Maine, Massachusetts, and Vermont could offer Plaintiffs a full adjudication of their state law claims with a deeper well of experience and familiarity with the relevant statutes from which to draw.  As there will be no remaining federal claims to consider upon dismissal of the FLSA count, and none of the other factors support

supplemental jurisdiction, it would indeed be "needless" for the Court to adjudicate Plaintiffs' state-law claims. *Id.*

In sum, Plaintiffs have failed to present a plausible federal-law claim for the Court to resolve, and any considerations that might tip the scales in favor of supplemental jurisdiction are absent. The Court should decline jurisdiction over Plaintiffs' state-law claims.

### E.   Even If the Court Considers the State-Law Claims, Plaintiffs Again Fail to Meet the Standard of Rule 12(b)(6).

Because Plaintiffs have failed to state a plausible claim for relief under federal law and there is no reason to reach their state-law claims, the Court could easily dismiss the FAC in its entirety on those bases alone. However, even if the Court were to consider the merits of Plaintiffs' state-law claims, they must meet the same fate. Plaintiffs have failed to plausibly plead violations of the state statues they invoke, subjecting those claims to dismissal under Rule 12(b)(6).

#### 1.   Plaintiffs Fail to Plausibly Allege Violations of Maine Law.

The Complaint asserts that that Casella violated several statutes: two separate provisions of Maine law (Count Two), three provisions of Massachusetts law (Count Three), and one provision of Vermont law (Count Four). In Count Two, Plaintiffs cite the Maine Employment Practices Act and the Wage and Overtime law, *see* FAC at 1 (citing 26 M.R.S.A. §§ 629, 664), and allege that Casella violated those laws by "failing to pay Plaintiff Rodney and the Maine Acts Class Members the correct amount of overtime for hours worked over 40 per week." *Id.* ¶ 130. They also

claim an additional violation because those Plaintiffs' "wages [allegedly] remain unpaid for more than sixteen (16) days beyond their regularly scheduled payday." *Id.* ¶ 132.

The allegations Plaintiffs offer in support of their Maine-law claims are equally as threadbare as the those proffered in support of their FLSA claim. With respect to allegedly unpaid overtime, Plaintiffs offer only the vague assertion that Maine plaintiffs "worked more than forty (40) hours in workweeks during times relevant to this case," *id.* ¶ 130, and there are no allegations of weekly schedules or shifts, average or estimated hours worked by any Maine plaintiff in a typical or particular week, or any other information to support a conclusion that those plaintiffs did, in fact, work more than 40 hours in a given week or to permit approximation of the amount of overtime pay in dispute. Even though Plaintiffs raise this claim under a state law rather than a federal statute, the pleading standard that applies in this Court is the same, and "simply stating that a plaintiff was not paid for overtime work" fails to satisfy Plaintiffs' burden. *Zhong*, 498 F. Supp. 2d at 630 (brackets and citation omitted).

The Maine untimely payment claim fares no better. Once again, Plaintiffs' assertion that wages "remain unpaid for more than sixteen (16) days beyond their regularly scheduled payday" appears to "amount to nothing more than a 'formulaic recitation of [one of] the elements'" of a claim, which is not entitled to an assumption of truth on a motion to dismiss. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). In addition, this claim lacks any identifiable basis in Maine law as pled.

Neither of the statutory provisions cited in the FAC establishes a sixteen-day period in which wages must be paid. *See* 26 M.R.S.A. § 629 (prohibiting agreements to work without compensation or conditioned on returning a portion of compensation to employer), § 664 (setting Maine's minimum wage and overtime rates). In the context of these inapposite statutory citations, Plaintiffs have failed to identify a basis for this portion of their claim under Maine law. It is Plaintiffs who bear the burden to state their claims with sufficient detail to "support a reasonable inference" that a violation of law occurred. *Nakahata*, 723 F.3d at 201. Allegations like those in Count Two of the FAC, which are so vague that it falls to Casella (and to the Court) to parse the Maine statutes in search of the relevant legal framework, misapprehend Plaintiffs' burden of pleading and fail to plausibly present a claim for relief.

### 2. Plaintiffs' Massachusetts Claims Also Fail to Meet the Applicable Pleading Standard.

Plaintiffs' Massachusetts claims must be dismissed for the many of the same reasons that apply to their FLSA and Maine law claims. First, their overtime claim under Mass. Gen. Laws ch. 151 § 1A exhibits the same dearth of factual support as their FLSA claim, particularly because the FAC contains no individualized allegations whatsoever as to Plaintiff Messom, the sole Massachusetts Plaintiff. *See Vinton v. Tu Moda Spa For Beauty & Wellness, Inc.*, No. 4:16-cv-11733-DHH, 2017 WL 5147652, at *5 (D. Mass. Nov. 16, 2017) (dismissing Massachusetts overtime claim after finding plaintiff failed to "sufficiently allege that [she] even worked overtime in the first place, let alone that [d]efendants failed to compensate her at the rate required for that work"). Plaintiff Messom has not alleged that he worked

more than 40 hours in any workweek and that Casella failed to pay him overtime for additional hours worked in that week, leaving his claims (and those of the class he would seek to represent) without even alleged factual support.

Plaintiffs' claim that Casella violated Mass. Gen. Laws ch. 149, § 100 by "coerc[ing]" Waste Disposal Drivers into working through their meal periods must also be dismissed.  FAC ¶ 157.  Factual deficiencies aside, "there is no private right of action under Massachusetts General Laws ch. 149, §§ 100, 101."  *White v. C. Carney Recycling Sols., LLC*, No. 20-CV-12287-RWZ, 2021 WL 2953341, at *1 (D. Mass. July 13, 2021) (citing *Salvas v. Wal-Mart Stores, Inc.*, 893 N.E.2d 1187, 1215 (Mass. 2008), which held that "G.L. c. 149, § 100, which requires that employers provide employees who work six hours or more with a thirty minute meal period, does not create a private right of action").

Finally, Plaintiffs' claim for timely payment of wages pursuant to Mass. Gen. Laws ch. 149, § 148 is unsupported by the merest hint of specific, non-conclusory factual content.  Instead, Plaintiffs have summarily alleged that they were not paid for all time "within the pay period in which they were earned, in violation of the Massachusetts Acts" which require payment "either weekly or biweekly."  FAC ¶¶ 155, 153.  Setting aside Plaintiffs' apparent misreading of the statute, which requires payment of wages within specified periods of time *after the termination* of a given pay period depending on the number of days worked per week, *see* Mass. Gen. Laws ch. 149, § 148, their allegations are nothing more than an effort to regurgitate the statutory language without any further factual adornment to render their claim

plausible.  This claim, and the others purportedly arising under Massachusetts law, must be dismissed as inadequately pled.

### 3. Plaintiffs' Vermont Claim Is Likewise Deficient and Fails as a Matter of Law.

Plaintiffs' Vermont-law claim in Count Four of the FAC fails for much the same reason.  Plaintiffs assert that Casella failed to pay the Vermont plaintiffs "all wages within six days of the close of their workweek" as required by 21 V.S.A. § 342, but the FAC is devoid of any factual specificity regarding when and how this violation allegedly occurred.  Plaintiffs do not identify even a single instance in which Casella failed to pay Plaintiff Sibley or any other Vermont Waste Disposal Driver within the period required by statute.  Instead, they once again rest on conclusory and redundant assertions to the effect that "Casella failed to pay all wages earned in a timely manner as required by the VWHS."  FAC ¶ 186; *see also id.* ¶¶ 183-84 (alleging that Plaintiff Sibley and the putative Vermont Class Members "were not paid all wages within six days of the close of their workweek" and that wages "remain unpaid").  Here, as with their other claims, Plaintiffs' allegations simply parrot the language of the statute without offering enough facts to render their claims plausible, rather than merely conceivable.

Without any specific allegations, Casella and the Court are left to guess at what the basis is (if any) for the Vermont-law claim—and whether it is actionable under Vermont's statutes.  To the extent that the claim is based on the underlying assertion that Casella did not credit Plaintiffs for all their hours worked and therefore owes them unpaid overtime compensation, Vermont law prohibits them

from boot-strapping an untimely payment claim based on that same conduct.  The

Vermont Supreme Court has explained that Subchapters 2 and 3 of Title 21 are

distinct and regulate different issues:

> Subchapter 2 ("Wages and Medium of Payment") of chapter 5
> ("Employment Practices") makes it unlawful to delay payment of
> weekly wages beyond six days from the end of the week the wages were
> earned. 21 V.S.A. § 342(a).  Subchapter 2 also provides other measures
> to ensure prompt payment, the form of payment, investigative
> procedures, and criminal and civil penalties. In short, the penalty
> provision applies only to violations of the timeliness and form of wage
> requirements, not the underpayment of wages. The minimum wage
> requirement is found in subchapter 3 ("Minimum Wages"), ***a self-
> contained regulatory scheme distinct from the preceding
> subchapter***. Criminal penalties and civil remedies are unique to
> violations of the requirements in subchapter 3. 21 V.S.A. §§ 394(b), 395.

*Lanphear v. Tognelli*, 157 Vt. 560, 563–64, 601 A.2d 1384, 1386 (1991) (emphasis

added).  Accordingly, "an employee could not recover penalties under § 347 for an

employer's failure to pay the minimum wage[4] in accordance with 21 V.S.A. § 384."

*Stowell v. Action Moving & Storage, Inc.*, 2007 VT 46, ¶ 23, 182 Vt. 98, 933 A.2d

1128.  Given the separate conduct targeted by these statutory schemes and

corresponding distinct relief provided, Plaintiffs cannot transpose an alleged

overtime violation into a *de facto* violation of the prompt payment statute.

Ultimately, the dearth of specific allegations supporting Plaintiffs' Vermont-

law claim makes it impossible to understand what acts or omissions allegedly

violated the laws invoked.  Thus, even if the Court were to deem the exercise of

---

[4] Although subchapter 3 of Title 21 is titled "Minimum Wage," 21 V.S.A. § 384 also sets the required
rate of pay for overtime (mirroring the FLSA).  The holdings of *Lanphear* and *Stowell* as to a
plaintiff's inability to raise a claim for the same conduct under both subchapters of the statutory
scheme thus applies with equal force to unpaid overtime.

supplemental jurisdiction over Plaintiffs' state-law claims prudent, it should nonetheless dismiss the Vermont claim as insufficiently pled rather than relying on extensive speculation to fill the factual holes in the FAC.

## IV.    Conclusion

Despite the fact that the Named Plaintiffs have approximately five years of employment at Casella between them, the FAC fails to provide basic information in support of their individual claims.  Instead of alleging facts that could support a reasonable inference that any Named Plaintiff was wrongfully deprived of overtime compensation, the FAC is drafted with a clear intent to broaden this case into an expansive class and collective action without laying the necessary groundwork first. Plaintiffs have wholly failed to carry their burden to proffer enough facts to "raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged" as to any of them individually.  *Whiteside*, 995 F.3d at 323 (internal quotation marks and citation omitted); *see also Saltis v. NuVasive, Inc.*, No. 2:19-cv-89, 2020 WL 4689787, at *2 (D. Vt. Mar. 13, 2020) (granting motion to dismiss where, "[f]or each of his claims, [p]laintiff recites the essential elements without any factual support"). The FAC should therefore be dismissed in full.

Dated at Burlington, Vermont this 25th day of October, 2021.

/s/ Ritchie E. Berger
Ritchie E. Berger, Esq.
Justin B. Barnard, Esq.
Anne B. Rosenblum, Esq.
DINSE P.C.
209 Battery Street, P.O. Box 988
Burlington, VT 05402
802-864-5751
rberger@dinse.com
jbarnard@dinse.com
arosenblum@dinse.com

*Counsel for Defendant Casella Waste Systems, Inc.*

cc:    Tristan Christopher Larson, Esq.
       Clif Alexander, Esq.
       Austin W. Anderson, Esq.