U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JUL 15 PM 3:42

CLERK
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOSEPH WILSON RODNEY, JR., )
ROSEMARIE SIBLEY, and )
KENNETH MESSOM, )
)
    Plaintiffs, )
)
v. )   Case No. 2:21-cv-196
)
CASELLA WASTE SYSTEMS, INC. )
)
)
    Defendant. )

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
(Doc. 21)

Plaintiffs Joseph Wilson Rodney, Jr.; Rosemarie Sibley; and Kenneth Messom bring this action individually and on behalf of all current and former non-exempt waste disposal drivers (collectively, "Plaintiffs") who have worked for Defendant Casella Waste Systems, Inc. ("Defendant"). They allege a collective action pursuant to the Fair Labor Standards Act (the "FLSA") and class action claims pursuant to state law under Fed. R. Civ. P. 23.

Plaintiffs filed their original Complaint on August 17, 2021, which Defendant moved to dismiss on September 20, 2021. While Defendant's first motion to dismiss was pending, Plaintiffs filed their First Amended Complaint (the "FAC") on October 12, 2021. (Doc. 17.) The FAC alleges: failure to pay wages and overtime under the FLSA (Count I), failure to pay wages in accordance with Maine law (Count II), failure to pay wages in accordance with Massachusetts law (Count III), and failure to pay wages in accordance with Vermont law (Count IV). Defendant seeks dismissal of the FAC for failure to state a claim. (Doc. 21.) On November 24, 2021, Plaintiffs opposed the motion,

and on December 7, 2021, Defendant replied. The court held oral argument on May 2, 2022, at which time it took the pending motion under advisement.

Plaintiffs are represented by Alan Cliff Gordon, Esq.; Austin W. Anderson, Esq.; Tristan C. Larson, Esq.; and William C. Alexander, Esq. Defendant is represented by Ritchie E. Berger, Esq.; Anne B. Rosenblum, Esq.; Justin B. Barnard, Esq.; and Haley S. Peterson, Esq.

## I.   Allegations in the FAC.

Defendant "is a full-service solid waste company providing waste collection and disposal services to commercial, industrial, and residential customers in the states of Vermont, Massachusetts, Maine, New Hampshire, Pennsylvania, and New York." (Doc. 17 at 6, ¶ 28) (footnote omitted). It "operates through multiple affiliated and subsidiary entities that are owned and operated by the same core individuals and out of the same principal office[,]" which "subject[s Plaintiffs] to the same management . . . regardless of the name of the subsidiary entity on their paychecks[,]" and "maintains centralized control of all labor relations [determinations] that impact Plaintiffs[.]" *Id.* at ¶¶ 29-31. Defendant and its subsidiaries and affiliates allegedly "perform the same waste disposal services, utilize the same equipment, and operate under the Casella business name." *Id.* at ¶ 32.

Plaintiff Rodney worked for Defendant through its subsidiary Pine Tree Waste, Inc. as a waste disposal driver in West Bath, Maine and Scarborough, Maine from August 1, 2018 through December 1, 2019. Plaintiff Sibley worked for Defendant as a waste disposal driver in Williston, Vermont from July 1, 2018 through August 2021. Plaintiff Messom worked for Defendant as a waste disposal driver in Auburn, Massachusetts from January 2019 through June 2019.

Although their "exact job titles may differ," Defendant's waste disposal drivers were allegedly "subjected to the same or similar illegal pay practices for similar work throughout the United States." *Id.* at 7, ¶ 44. Defendant "usually scheduled" waste disposal drivers "to work five to six days and 45-60 hours per week." *Id.* at 8, ¶ 47 (footnote omitted). Plaintiffs "did usually work that many hours on-the-clock per

week[,]" which rendered "nearly all of the off-the-clock time that [they] performed for [Defendant]," and which was not paid, "time in excess" of their scheduled time. *Id.* at ¶¶ 48-49. Accordingly, Plaintiffs assert that while they "routinely worked (and continue to work) in excess of forty (40) hours per workweek[,]" Defendant "knowingly and deliberately failed to compensate [them] for all hours worked[.]" (Doc. 17 at 2, ¶¶ 3-4.)

Plaintiffs point to several employment practices which they claim are unlawful under the FLSA and/or state law. For example, they contend Defendant "automatically deduct[s] a 30-minute meal-period" from each workday. *Id.* ¶ 5. "Due to the time pressures involved in completing their routes to pick up waste, transporting the waste to a landfill, and then waiting in line at the dump for their turn . . . [m]ost drivers work[ ] through their meal break every day." *Id.* at 9, ¶ 52. Certain unnamed Plaintiffs allegedly "complained during morning meetings to their supervisors" about the auto-deduct policy but "were told that the 30 minutes had to be deducted regardless of whether they actually took a meal break." *Id.* at ¶ 53.

"[S]ome Casella supervisors instructed Plaintiffs . . . to eat while waiting in line at a landfill" while others allegedly told Plaintiffs "to work through their meal break so that they could comp[l]ete their work." *Id.* at ¶ 54. Defendant is therefore alleged to have impermissibly deducted a minimum of 2.5 "on-the-clock" hours from each five-day workweek and three hours from each six-day workweek, resulting in Plaintiffs' overtime hours being paid at a deflated rate. *Id.* at ¶¶ 56-58 (internal quotation marks omitted). The only alleged example of this practice is that "Plaintiff Sibley worked 52.53 hours during the week of August 1, 2021, to August 7, 2021, but—due to Casella's meal break deduction—was only paid for 50.03 hours of work." (Doc. 17 at 9, ¶ 59.) Plaintiffs do not further allege, however, that Plaintiff Sibley worked through any of her meal breaks in that week.

In addition, Defendant allegedly fails to compensate Plaintiffs "for all hours spent . . . performing mandatory pre-trip and post-trip vehicle inspections" that occur at the beginning and end of each shift. *Id.* at 3, ¶ 6. "[E]ach inspection takes approximately fifteen (15) minutes to complete, for a total of 30 minutes per day for each driver five to

six times per week." *Id.* at 10, ¶ 63. Defendant is allegedly aware these inspections are performed "'off-the-clock' and without pay" and "at times directed Plaintiffs" to perform the inspections off the clock. *Id.* at ¶¶ 64-65. "Specifically, Plaintiff Rodney was either clocked out by his supervisor or was told to clock out by his supervisor anytime he approached sixty (60) hours worked in any given workweek." *Id.* at ¶ 66. This practice results in the "fail[ure] to properly calculate Plaintiffs' . . . overtime under the FLSA [and state statutes in Maine, Massachusetts, and Vermont.]" *Id.* at 3, ¶ 7.

"Finally, [Defendant] also pa[ys] Plaintiffs . . . non-discretionary job bonuses but fail[s] to include these non-discretionary bonuses in Plaintiffs' . . . regular rates of pay." (Doc. 17 at 3, ¶ 8.) Defendant's practice "caus[es] a miscalculation of the regular rate of pay for purposes of overtime compensation." *Id.* at 11, ¶ 70. Such bonuses are "based upon . . . pre-determined formula[s] established by [Defendant]" for categories including a "driver's safety record[ ] and . . . vaccination status[.]" *Id.* at ¶¶ 71, 74. Bonuses are meant to "encourage and motivate [Plaintiffs] to drive safely and avoid accidents" and are only paid after "specific criteria" are met by the drivers. *Id.* at ¶¶ 73, 75. Once Plaintiffs meet the requisite standard, "they [are] entitled to receive these non-discretionary bonuses." *Id.* at ¶ 76. "Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiffs' regular rates of pay before any and all overtime multipliers were applied." *Id.* at 12, ¶ 77. Defendant's "failure to compensate Plaintiffs . . . for all of their hours worked, including overtime hours at a rate of time and one-half their regular rate[,] violated (and continues to violate) the FLSA and relevant state law(s)." (Doc. 17 at 12, ¶ 78.) "By way of example, Plaintiff Sibley received a safety bonus for the pay period of March 18, 2021, through March 24, 2021, in the amount of $212.44 because she did not have any moving violations during the preceding four-month period; however, the non-discretionary bonus was not included in her regular rate and her overtime was improperly calculated and paid based only off of her hourly pay rate." *Id.* at 11, ¶ 72.

Plaintiffs allege that Defendant "knew or recklessly disregarded" that it was miscalculating Plaintiffs' regular rates of pay and not paying earned overtime pay, which

4

renders its actions "willful violations [of] the FLSA [that] were not made in good faith." *Id.* at 12, ¶¶ 79, 82. Because Defendant did not pay Plaintiffs "for all straight-time hours worked, [Defendant's] pay policies and practices also violate the state laws of Maine, Massachusetts, and Vermont." *Id.* at ¶ 83. Plaintiffs assert they do not perform work "that meets the definition of exempt work" under the FLSA or the applicable state statutes. *Id.* at 3, ¶ 10.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss, the SAC "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" nor "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

### B. Whether Plaintiffs Plausibly Allege an FLSA Overtime Claim.

"The FLSA stipulates that 'no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his

5

employment in excess of [forty hours] . . . at a rate not less than one and one-half times the regular rate at which he is employed." *Beaulieu v. Vermont*, 2010 WL 3632460, at *3 (D. Vt. Aug. 5, 2010) (alterations in original) (quoting 29 U.S.C. § 207(a)(1)).

In the Second Circuit,

> "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). Plaintiffs must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Allegations that an employee "occasionally" or "typically" missed breaks provides "nothing but low-octane fuel for speculation, not the plausible claim that is required." *Lundy*, 711 F.3d at 115. Similarly, allegations that an employee "regularly worked" more than forty hours per week are merely legal conclusions that constitute "little more than a paraphrase of the statute" and cannot, standing alone, establish a plausible claim. *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013).

*Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) (alteration in original).

"Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy*, 711 F.3d at 114 (citation and footnote omitted). In *Lundy*, the Second Circuit found the plaintiffs failed to allege a plausible FLSA violation where they did "not allege[ ] a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.* In *Nakahata*, the Second Circuit found that "allegations . . . that [p]laintiffs were not compensated for work performed during meal breaks, before and after shifts, or during required trainings . . . raise the possibility that [p]laintiffs were undercompensated in violation of the FLSA and [New York Labor Law] however, absent any allegation that [p]laintiffs were scheduled to work forty hours *in a given week*, these allegations do not state a plausible claim for such relief." *Nakahata*, 723 F.3d at 201 (emphasis supplied). In *Dejesus*, the Second Circuit explained

6

"*Lundy's* requirement that plaintiffs must allege overtime without compensation in a 'given' workweek, was not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus*, 726 F.3d at 90 (citations omitted). Accordingly, the plaintiff's allegation that in "some or all weeks" she worked more than "forty hours" per week without being paid "1.5" times her rate of compensation warranted dismissal. *Id.* at 89 (internal quotation marks omitted).

In the FAC, Plaintiffs allege that Defendant "usually scheduled" its waste disposal drivers to work 45-60 hours per week and thus Plaintiffs "did usually work that many hours on-the clock per week[.]" (Doc. 17 at 8, ¶¶ 47-48.) These contentions regarding how waste disposal drivers were "usually scheduled" and how Plaintiffs "usually work[ed,]" standing alone, are insufficient to state a claim for relief. *Id.*; *see also Dejesus*, 726 F.3d at 89 (finding allegations that a plaintiff worked more than forty hours "in some or all weeks" insufficient to state an FLSA claim) (internal quotation marks omitted); *Lusk v. Serve U Brands, Inc.*, 2018 WL 826857, at *3 (W.D.N.Y. Feb. 12, 2018) ("In this case, [n]amed [p]laintiffs allege that they worked in excess of 40 hours on 'numerous occasions' without being paid at least one and one-half times their regular rate. This allegation is essentially the same as the allegation the Second Circuit found insufficient in *Dejesus*.") (citations omitted).

The FAC is similarly devoid of specific factual allegations pertaining to each of the Named Plaintiffs, and it provides no allegations specific to Plaintiff Messom. The sole allegation specific to Plaintiff Rodney states that he "was either clocked out by his supervisor or was told to clock out by his supervisor anytime he approached sixty (60) hours worked in any given workweek[,]" but the FAC fails to allege a single workweek where he worked over forty hours. (Doc. 17 at 10, ¶ 66.)

According to the FAC, "Plaintiff Sibley worked 52.53 hours during the week of August 1, 2021" but "due to [Defendant's] meal break deduction" she "was only paid for 50.03 hours of work." *Id.* at 9, ¶ 59. The FAC does not, however, further allege that Plaintiff Sibley worked through a lunch period during that week. Similarly, the FAC alleges that in March 2021, Plaintiff Sibley received a "safety bonus . . . in the amount of

7

$212.44 because she did not have any moving violations during the preceding four-month period[.]" *Id.* at 11, ¶ 72. Plaintiffs allege that safety bonus was not included in Plaintiff Sibley's regular rate of pay, which allegedly resulted in an overtime miscalculation, but they fail to identify any workweek in which Plaintiff Sibley worked over forty hours and was entitled to overtime during this period.

Plaintiffs' pleading style, which is akin to group pleading, improperly relies on generalized allegations regarding all waste disposal drivers employed by Defendant over a number of years rather than the Named Plaintiffs. *See, e.g., Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560, 567 (E.D. Pa. 2017) ("[T]he law *does* require every named plaintiff to plead a FLSA violation.") (citation omitted) (emphasis supplied); *Lundy*, 711 F.3d at 114-15 (evaluating allegations regarding scheduling and hours worked for multiple named plaintiffs); *Lusk*, 2018 WL 826857, at *3 (analyzing allegations regarding named plaintiffs). As the Third Circuit held after adopting the Second Circuit's FLSA pleading standard:

> None of the named plaintiffs has alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours. Of the four named plaintiffs who allege that they "typically" worked at least forty hours per week, in addition to extra hours "frequently" worked during meal breaks or outside of their scheduled shifts—Davis, Erica Williams, Gerardina Ilaria, and Diane Read—none indicates that she in fact worked extra hours *during* a typical (that is, a forty-hour) week. Their allegations are therefore insufficient.

*Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (citations omitted) (emphasis in original).

Plaintiffs point to cases determining that a plaintiff who alleged that he or she worked a *baseline* of at least forty hours per week and also worked during their lunch period or at other times without receiving overtime pay provided sufficient detail at the pleading stage. *See, e.g., Butt v. HF Mgmt. Servs., LLC*, 2020 WL 207393, at *3 (E.D.N.Y. Jan. 14, 2020) ("The plaintiff has alleged that he worked a baseline of forty hours per week, that his post-shift work pushed his hours worked beyond forty hours per week, and that his post-shift tasks consisted factually of his primary work duties."). No

similar allegations are present here. The FAC remains too generalized to support an FLSA claim by any of the Named Plaintiffs. For the foregoing reasons, Defendant's motion to dismiss Count I of the FAC is GRANTED.

### C. Whether the Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims.

Defendant asserts that because Plaintiffs' FLSA claim warrants dismissal, the court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims in Counts II-IV. Plaintiffs respond in a footnote that the sufficiency of their allegations render this issue moot. (Doc. 26 at 10 n.3.)

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Drake v. Vill. of Lima*, 530 F. Supp. 3d 285, 294 (W.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014)); *see also Edmonds v. Seavey*, 379 F. App'x 62, 64 n.1 (2d Cir. 2010) ("As there existed no independent basis for subject matter jurisdiction over appellant's remaining state law claims, the district court was well within its discretion to decline to exercise supplemental jurisdiction over those claims.") (citing *Matican v. City of New York*, 524 F.3d 151, 154-55 (2d Cir. 2008)); *Lundy*, 711 F.3d at 118 (noting that the supplemental jurisdiction analysis will usually "point toward a declination" once federal claims have been dismissed) (citation omitted).

As the court has dismissed Plaintiffs' only federal claim, it declines to exercise supplemental jurisdiction over their remaining state law claims. *See Drake*, 530 F. Supp. 3d at 294-95 (finding that "given the early stage of the proceedings" and "the fact that the remaining causes of action involve quintessential areas of state law[,]" it was appropriate for the district court to decline to exercise supplemental jurisdiction over plaintiff's remaining state law causes of action once the federal claims were dismissed).[1]

---

[1] If Plaintiffs elect to file a Second Amended Complaint which includes state law claims, the court instructs Plaintiffs to identify the factual and legal bases for their claims in separate causes of action. *See* Fed. R. Civ. P. 8. The FAC appears to include multiple alleged state law violations in a single count without factual support and, in some instances, based on an erroneous statutory basis. *See* Doc. 26 at 17 (conceding that "the FAC inadvertently refers to the [incorrect] provision" when alleging a violation of Maine law).

### D.  Leave to Amend.

Pursuant to Fed R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R Civ. P. 15(a). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Because at this juncture the court cannot find that any claims asserted by Plaintiffs would be futile, because Defendant does not oppose leave to amend, and because there is no other ground on which to deny leave to amend, Plaintiffs are hereby GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

### CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss. (Doc. 21.) Plaintiffs are GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 15th day of July, 2022.

Christina Reiss, District Judge
United States District Court