UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JOSEPH WILSON RODNEY, JR.,           )
*et al.*, individually and           )
on behalf of all others similarly situated, )
                                     )
Plaintiffs,                          )
                                     )
        v.                           )        Case No. 2:21-cv-00196
                                     )
CASELLA WASTE SYSTEMS, INC.,         )
                                     )
Defendant.                           )

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO NOTIFY PUTATIVE CLASS MEMBERS

(Doc. 49)

Plaintiffs Joseph Wilson Rodney, Jr., Rosemarie Sibley, and Kenneth Messom,

individually and behalf of all opt-in plaintiffs and others similarly situated, bring this

collective action under the Fair Labor Standards Act ("FLSA") against Defendant Casella

Waste Systems, Inc. ("Casella") and class actions pursuant to Maine, Massachusetts, and

Vermont state laws to recover unpaid straight time, overtime wages, and other penalties.

Plaintiffs' state-law class actions are not relevant to this pending motion.

Pending before the court is Plaintiffs' motion for conditional certification of a

collective action and notification of the putative class members pursuant to 29 U.S.C. §

216(b). (Doc 49.) On September 14, 2022, Casella opposed the motion (Doc. 52), and on

October 5, 2022, Plaintiffs replied (Doc. 59), at which time the court took the motion

under advisement.[1]

_____

[1] On August 17, 2022, Casella filed a motion for summary judgment wherein it argued that
Plaintiffs are subject to an FLSA exemption. (Doc. 48.) Shortly thereafter, the parties filed a joint
motion for phased discovery on October 11, 2022 (Doc. 60), which noted that Plaintiffs required
discovery on Casella's exemption argument in order to respond to the motion for summary
judgment. The court granted the joint motion for phased discovery on October 13, 2022. (Doc.

Plaintiffs are represented by Alan Cliff Gordon, Esq., Austin W. Anderson, Esq., Carter T. Hastings, Esq., Tristan C. Larson, Esq., and William C. Alexander, Esq. Defendant is represented by Ritchie E. Berger, Esq, Anne B. Rosenblum, Esq., Haley S. Peterson, Esq., and Justin B. Barnard, Esq.

## I.     Factual and Procedural Background.

The following facts are derived from Plaintiffs' second amended collective/class action complaint ("SAC") (Doc. 45) and the affidavits of Kristie Cimo, Anthony Corey, Michael Gonzales, John Hogan, Keith Odell, Dale Philibotte, Joseph Wilson Rodney, Jr., Rosemarie Sibley, Anthony Soto, Joseph Stacey, Joseph Thibodeau, Kenneth Webb, and Kenneth Messom (collectively, "the supporting affidavits").

Plaintiffs are current and former employees of Casella who worked as waste disposal drivers "at any time since August 17, 2018[] through the final disposition of this matter." (Doc. 45 at 2, ¶ 2.)

Casella is a "solid waste services company comprised of numerous subsidiaries that provide collection, transfer, disposal, landfill, recycling, and organics services." (Doc. 52-1 at 1, ¶ 4.) It employs approximately 1,020 waste disposal drivers at fifty hauling locations in seven states. *Id.* at ¶ 5.

Casella serves "customers in . . . Vermont, Massachusetts, Maine, New Hampshire, Pennsylvania, and New York." (Doc. 45 at 6, ¶ 27.)[2] "Casella operates through multiple affiliated and subsidiary entities that are owned and operated by the same core individuals and out of the same principal office." *Id.* at ¶ 28. For this reason, "Plaintiffs and the [p]utative [c]lass [m]embers are subjected to the same management through Casella, regardless of the name of the subsidiary" by which they are employed. *Id.* at ¶ 29. "Casella maintains centralized control of all labor relations that impact" Plaintiffs and the putative class members and "makes all determinations relevant to" their

---

61.) As a result, Casella's motion for summary judgment is not ripe. The parties nonetheless disagree regarding whether the court should decide Plaintiffs' motion for conditional certification before deciding Casella's motion for summary judgment.

[2] Defendants point out that Casella also serves customers in Connecticut.

employment. *Id.* at ¶ 30. Casella and its subsidiaries "are subject to common ownership and financial control." *Id.* at ¶ 32.

Plaintiffs and the putative class members performed similar job duties, were paid in a similar manner, and worked five to six days and forty-five to sixty hours per week "on-the-clock[,]" *id.* at 7, ¶ 40, for which they received compensation. In addition to their on-the-clock time, Plaintiffs and the putative class members allege that they "also worked five to six hours off-the-clock each week[,]" (Doc. 45 at 8, ¶ 41), which they contend is overtime work for which they did not receive overtime wages in violation of the FLSA.

Plaintiffs allege that Casella automatically deducts thirty minutes per day from its waste disposal drivers' hours worked for a meal period, despite its awareness that Plaintiffs and the putative class members "regularly worked (and continue to work) through their [thirty]-minute meal periods without pay in violation of the FLSA." *Id.* at ¶ 45. They further assert that "[d]ue to the time pressures involved in completing their routes[,]" they "could not feasibly take a meal break and complete their assigned routes within the time frame required by Casella." *Id.* at ¶ 46. As a result, they "worked through their meal break almost every day." *Id.* at ¶ 47. Plaintiffs contend they complained to their supervisors about Casella's automatic thirty-minute deduction and in response, their supervisors informed them "that the [thirty] minutes had to be deducted from their wages regardless of whether they actually took a meal break." *Id.* at 9, ¶ 50. According to Plaintiffs, "for each five-day workweek, Casella deducted (and continues to deduct) a minimum of 2.5 hours from each workweek's total 'on the clock' hours." *Id.* at ¶ 54. "For a six-day workweek, Casella deducted (and continues to deduct) a minimum of three hours from each workweek's total 'on the clock' hours." (Doc. 45 at 9, ¶ 55.) This deducted time prevented Plaintiffs and putative class members from compensation at "time and one-half" and deprived them "of the required and proper amount of overtime pay in violation of the FLSA." *Id.* at 10, ¶¶ 58-59.

Plaintiffs seek conditional certification of a class of "all current and former [w]aste [d]isposal [d]rivers who worked for Casella Waste Systems, Inc., anywhere in the United States, at any time from August 17, 2018 through the final disposition of this matter"

pursuant to the FLSA. (Doc. 49 at 1) (internal quotation marks omitted). They also request that the court: (1) approve the form of Plaintiffs' proposed notice; (2) set a sixty-day notice period; (3) authorize Plaintiffs' counsel to mail, e-mail, and text message the notice at the beginning of the sixty-day notice period; (4) authorize Plaintiffs' counsel to send a reminder notice thirty days prior to the notice deadline; (5) order Casella to post the notice "in a conspicuous location next to the time clocks at Casella worksites for the duration of the [sixty]-day opt-in period" *id.*; and (6) order Casella to produce a list within either ten or fourteen days of the court's order, "in a computer-readable format (such as Excel)," of all putative class members "who worked for Casella at any time from August 17, 2018 through the final disposition of this matter," *id.* at 1-2, including the following information about each individual: full name, job title, last known address, last known personal e-mail address, telephone number, dates of employment, and location of employment.

The supporting affidavits explain the alleged unlawful meal break deduction for thirteen current and former Casella employees in ten different hauling locations.[3] Those employees provide their dates of employment with Casella, the locations of their employment, their titles, and their approximate hourly pay. They describe their daily duties as including "the collection, transportation[,] and disposal of waste for Casella

---

[3] Casella argues that the court should not consider John Hogan's declaration because he "ceased working for Casella more than three years prior to the suit . . . and therefore, even if a three year statute of limitations applies, Mr. Hogan would be barred from this suit." (Doc. 52 at 17 n.10.) Plaintiffs respond that "Mr. Hogan's testimony about Casella's practices at its Fort Edward, New York[] facility provides probative evidence in support of Plaintiffs' argument that they" and the putative class members "are similarly situated." (Doc. 59 at 11 n.3.) In their proposed statement of the class, Plaintiffs have defined the requisite dates of employment as beginning on August 17, 2018. Mr. Hogan asserts that he worked at Casella until August of 2018. Even if Mr. Hogan could not be part of an FLSA collective action, his sworn statement is relevant to Casella's alleged FLSA violation. *See Rosario v. Valentine Avenue Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) ("Affidavits of workers whose employment falls outside the statutory period 'are probative of employer's wage and hour practices and they may corroborate the claims of more recent violations.'") (quoting *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011)).

and/or its clients[.]" *See, e.g.*, Doc. 49-3 at 2, ¶ 4. Each affiant provided that they were required to work overtime hours for which they were not compensated by Casella.

## II.     Conclusions of Law and Analysis.

### A.     Conditional Class Certification under the FLSA, 29 U.S.C. § 216(b).

The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Section 216(b) of the FLSA provides: "An action to recover the liability prescribed in [this section] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This section "expressly authorizes employees to bring collective . . . actions" and thereby evinces a congressional policy of allowing FLSA plaintiffs "the opportunity to proceed collectively." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

A § 216(b) collective action differs from a class action pursuant to Fed. R. Civ. P. 23 in several important respects. To participate in a FLSA collective action, plaintiffs must opt in. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011) ("The FLSA requires . . . that an employee affirmatively consent to join a 'collective action' in order to assert a claim" as opposed to a "traditional 'opt-out' class action[.]"). "[T]he strict requirements" of Rule 23, including "numerosity, commonality, typicality, and adequate representation[,] do not apply to a collective action." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014). As a result, the "similarly situated" standard required to conditionally certify a § 216(b) collective action "is significantly lower than for a Rule

23 settlement[.]" *Flores v. One Hanover, LLC*, 2014 WL 2567912, at *6 (S.D.N.Y. June 9, 2014).

In *Hoffmann-La Roche*, the Supreme Court addressed whether "district courts may play any role in prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought." *Id.* at 169. It held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs" and by allowing discovery of the names and addresses of potential class members. *Id.* at 169-170; *see also Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) (interpreting § 216 "as permitting, rather than prohibiting, notice").

Once a § 216(b) action is filed, a district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way," and it is "within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Hoffmann-La Roche*, 493 U.S. at 170-71. A district court's discretion, however, is not "unbridled[,]" and it "must be scrupulous to respect judicial neutrality . . . to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174 (cautioning that "intervention in the notice process for case management purposes [must be] distinguishable in form and function from the solicitation of claims").

To determine whether a matter should proceed as a collective action, the Second Circuit has endorsed a two-step process:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. . . . At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

6

*Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (internal citations omitted) ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible."); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("In *Myers*, we endorsed a two-step process for certifying FLSA collective actions.").

Conditional certification is the first step "in which the court determines, based on [the] plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). Plaintiffs may satisfy this burden through a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 345 (E.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). The named plaintiffs' burden "is very low" at this stage, and "the initial 'conditional certification' determination is merely a preliminary finding." *Lynch*, 491 F. Supp. 2d at 368 (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)); *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (describing standard as "lenient"). A district court should "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" when considering whether the named plaintiff and potential opt-in members are similarly situated, and "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Lynch*, 491 F. Supp. 2d at 368-369; *see also Iglesias-Mendoza*, 239 F.R.D. at 368.

"[T]he named plaintiff need only demonstrate a 'factual nexus' between his or her situation and the situation of other current and former employees." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (quoting *Hoffmann*, 982 F. Supp. at 261, 262) (collecting cases). The focus of this first step "is not on whether there has been

7

an actual violation of law[,] but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young*, 229 F.R.D. at 54. "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)).

"When determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA."[4] *Iglesias-Mendoza*, 239 F.R.D. at 367 (citing *Braunstein*, 600 F.2d at 336). If the named plaintiff "meets the minimal burden of showing that the similarly situated requirement is met, a court certifies the class as a collective action[,]" and "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Lee*, 236 F.R.D. at 197; *see also Lynch*, 491 F. Supp. 2d at 368 ("Once the court determines that potential opt-in plaintiffs may be 'similarly situated' for the purposes of authorizing notice, the court 'conditionally certifies' the collective action, and the plaintiff sends court-approved notice to potential members.") (quoting *Iglesias-Mendoza*, 239 F.R.D. at 367). The "potential plaintiffs may then elect to opt-in pursuant to [§] 216(b) by filing Consent Forms with the court[,]" and,

---

[4] The Supreme Court and the Second Circuit have recognized that the FLSA's "principal congressional purpose . . . was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (second alteration in original) (quoting 29 U.S.C. § 202(a)); *Freeman v. Nat'l Broad. Co.*, 80 F.3d 78, 86 (2d Cir. 1996) ("[The] FLSA was intended . . . to prohibit substandard labor conditions."). The "FLSA was designed to give specific minimum protections to *individual* workers and to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.'" *Barrentine*, 450 U.S. at 739 (internal quotation marks omitted) (quoting 81 Cong. Rec. 4983 (1937)); *see also Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 283 (2d Cir. 2008) (same). The FLSA "sets a national 'floor' in terms of working conditions, in order to protect workers from the substandard wages and excessive hours that might otherwise result from the free market." *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998).

8

"[o]nce notice is accomplished, the action proceeds as a collective action throughout the discovery process." *Lynch*, 491 F. Supp. 2d at 368.

After discovery, at the second step, the "court examines the record and again makes a factual finding regarding the similarly situated requirement[.]" *Lee*, 236 F.R.D. at 197. "[I]f the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Id.*

## B.    Whether the Motor Carriers Act Prevents Conditional Certification.

Casella argues that the named Plaintiffs and a large portion of the putative class members lack standing to pursue conditional certification of their collective action because they are exempt from the FLSA's overtime provisions under the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502(b)(2). Plaintiffs contend that this is an affirmative defense which is merits-based and should not be considered at the first step of the certification process.

Under § 213(b)(1) of the FLSA, the law does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service[.]" The MCA provides the Secretary of Transportation with the authority to "prescribe requirements for" employees of "motor carrier[s]" and "motor private carrier[s], when needed to promote safety of operation." § 31502(b)(2).

If the court granted conditional certification and ordered notice "to all of Casella's drivers who worked during the relevant period," Casella asserts that "a large portion of the notice recipients would be drivers who . . . fall subject to the MCA exemption and have no claim. The [c]ourt would . . . be inviting a flood of opt-ins from individuals who have no viable claim and would need to be weeded out[.]" (Doc. 52 at 8.)

Courts in the Second Circuit have held that "[e]xemptions 'are affirmative defenses to overtime pay claims'" and that employers "bear[] the burden of proving that a plaintiff has been properly classified as an exempt employee." *Lloyd v. J.P. Morgan Chase & Co.*, 2013 WL 4828588, at *4 (S.D.N.Y. Sept. 9, 2013) (internal quotation

9

marks omitted). Generally, courts do not address affirmative defenses at the first step of the certification process. *See Thompson v. K.R. Drenth Trucking, Inc.*, 2011 WL 2446282, at *1 (S.D. Ind. June 15, 2011) (holding the district court "prematurely probed too deeply into the merits at the early conditional certification stage" when it determined that the MCA exemption applied to plaintiffs); *Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546, at *6 (N.D. Cal. Mar. 31, 2008) (noting that "at this first stage of conditional certification, it is inappropriate for the court to entertain an inquiry on the merits. The fact that such an inquiry will be necessary in the future does not constitute a sufficient ground to prevent putative class members from receiving notice"). Whether Plaintiffs and putative class members are subject to the MCA exemption to the FLSA is thus more appropriately raised in the context of the second step of the certification process or a request for decertification. *See Dominquez ex rel. v. Minnesota Beef Indus., Inc.*, 2007 WL 2422837, at *3 (D. Minn. Aug. 21, 2007) (explaining that arguments concerning the merits of plaintiff's claims "can be raised before the [c]ourt at the second, or decertification, stage"). Casella's proffered affirmative defense of exemption therefore does not preclude certification.

## C.    Whether Plaintiffs and Potential Opt-In Class Members Are Sufficiently Similarly Situated.

In addition to their own allegations, Plaintiffs have provided supporting affidavits explaining why they claim the FLSA has been violated and why they claim the proposed class consists of similarly situated employees. Their allegations and evidence are sufficiently detailed to allow the court to make the "similarly situated" determination. *Cf. Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 509, 512 (S.D.N.Y. 2010) (denying conditional certification where plaintiffs "failed to present their allegations with sufficient specificity" as to "detail what their 'uniforms' are comprised of" and "how much the purchase and maintenance of their uniforms cost them or how these costs relate to their weekly wage"); *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification when plaintiff's affidavit and exhibits included the "conclusory allegation" that twenty other employees were forced to work

10

overtime but there were "no allegations of a common policy or plan to deny . . . overtime").

In the instant case, the declarants aver they are current or former waste disposal drivers for Casella and their daily duties included collecting, transporting, and disposing of waste. They provide their titles, locations of employment, dates of employment, and hourly pay. Each declarant further avers that busy route schedules required the declarant to work through his or her breaks, uncompensated for the time worked. They further state that Casella was aware of this practice and refused to rectify it. Plaintiffs and declarants therefore "share a similar issue of law or fact material to the disposition of their FLSA claims[.]" *Scott*, 954 F.3d at 516 (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018)). "Courts have found employees 'similarly situated' . . . where they performed different job functions or worked at different locations" provided those employees "were subject to the same allegedly unlawful policy." *Harhash v. Infinity W. Shoes, Inc.*, 2011 WL 4001072, at *3 (S.D.N.Y. Aug. 25, 2011).

By identifying a specific policy that allegedly applies to all waste disposal drivers at all Casella hauling locations, Plaintiffs have shown the "factual nexus between . . . [their] situation and the situation of other current and former employees" employed in the same position and how "the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young*, 229 F.R.D. at 54 (internal quotation marks omitted); *see also Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (explaining plaintiff must show "he is similarly situated *to the employees he proposes to include in the collective action* with respect to" the plaintiff's specific FLSA claim).

### D.   Whether Plaintiffs Have Alleged a *De Facto* Illegal Policy.

Casella argues that Plaintiffs have failed to allege that they were subject to a uniform *de facto* illegal policy because the automatic meal deduction policy is lawful and Plaintiffs have not shown that Casella's supervisors and managers engaged in illegal acts. Casella characterizes Plaintiffs' allegations as "amount[ing] to alleged independent acts by a handful of largely unidentified managers and dispatchers[.]" (Doc. 52 at 14).

A facially unlawful policy "is not a prerequisite for conditional certification. Instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012), *class decertified by Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015); *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) ("Defendants correctly note that it is not unlawful for an employer to have a policy of discouraging overtime. Where such a policy, . . . in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that plaintiffs are similarly situated for purposes of section 216."). Plaintiffs concede that Casella's automatic meal deduction policy is not a per se violation of the FLSA. *See* Doc. 49-1 at 8 ("[A]n automatic meal period deduction itself does not violate the FLSA[.]"); *see also Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC*, 2012 WL 1004848, at *9 (E.D.N.Y. Mar. 23, 2012) ("Courts have recognized that automatic meal deduction policies are not *per se* illegal.") (internal quotation marks omitted); *Desilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) ("[A]utomatic meal deduction policies are not per se illegal."); *White v. Baptist Mem'l Health Care Corp.*, 2011 WL 1883959, at *8 (W.D. Tenn. May 17, 2011) ("Standing alone, an employer policy providing automatic deductions for meal breaks does not violate the FLSA.").

Automatic meal deduction policies may violate the FLSA, however, when employers fail to compensate employees who work during their meal breaks with the employer's knowledge and tacit consent. *See Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009) ("It is the failure of an employer to compensate employees who work through those unpaid meal breaks, and to police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated, that potentially runs afoul of the [FLSA]."). Although Casella correctly points out that "employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic meal deduction if they work through an unpaid meal[,]" *Briceno v. USI Servs. Grp., Inc.*, 2012 WL

12

4511626, at *6 (E.D.N.Y. Sept. 28, 2012), and "there is no duty to ensure that employees are not working through unpaid meal breaks," *Wolman v. Cath. Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 301 (E.D.N.Y. 2012), *aff'd in part, rev'd in part on other grounds sub nom Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013), it remains true that:

> an employer's *failure to 'ensure'* that its employees are not working during unpaid meal breaks does not make the use of an automatic meal deduction policy illegal. Rather, it is the *failure to compensate* an employee who worked with the employer's knowledge through an unpaid meal break— whether the employee reported the additional time or not—that potentially violates the FLSA.

*Id.*

Plaintiffs have alleged that Casella knew the drivers did not take their lunch breaks and could not complete their routes if they did so. Casella supervisors or managers allegedly nonetheless told drivers that Casella would deduct the meal break from their wages whether they took the break or not, resulting in hours worked that were uncompensated.

Casella argues that Plaintiffs' allegations are insufficient because Plaintiffs have not shown that supervisors and managers engaged in coordinated activity. They further claim that Plaintiffs' allegations are not sufficiently explicit as to why weekly routes were too time-consuming for a lunch break, dates and times when they were unable to take lunch breaks and when managers and supervisors were informed of this fact, or evidence that employees were not able to use the available procedure to correct their time records when they worked through their breaks. *See* Doc. 52 at 14. Casella cites to *Brickey v. Dolgencorp*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011) in support of its contention that Plaintiffs have failed to show sufficient evidence of a *de facto* illegal policy.

In *Brickey*, the defendant company maintained a payroll allocation policy which rewarded store managers who stayed within a "labor budget" of the recommended number of work hours. The plaintiffs conceded that the policy was "benign on its face" but alleged that it had "the direct and foreseeable effect of motivating managers to falsely

13

reduce reported work hours for their employees, and/or to assign employees tasks to be performed 'off the clock,'" resulting in "under[-]compensation of . . . overtime." *Id.* at 347. The plaintiffs did not allege, however, "that it was impossible or even difficult for managers to comply with the policy without engaging in illegal activities[,]" and a number of the affidavits were submitted "by named plaintiffs and putative class members who eventually became managers, all of whom contend[ed] that they fulfilled their managerial duties without resorting to FLSA violations." *Id.* The court denied the plaintiffs' request for conditional certification because they failed to show that any FLSA violation "was widespread or common practice, or that [company] managers" violated the law "because they were instructed, compelled, forced, or encouraged to do so by" other company policies. *Id.* at 348.

In contrast, in this case, Plaintiffs have provided specific allegations and supporting declarations explaining why they claim the FLSA has been violated in different hauling locations in multiple states and that Casella knowingly failed to compensate employees for working through their meal breaks. A greater level of detail is not required at the pleading stage or at the first step of the certification process. *See Clark v. Dollar Gen. Corp.*, 2001 WL 878887, at *4-6 (M.D. Tenn. May 23, 2001) (holding plaintiffs "produced sufficient evidence to show" FLSA violations through twelve supporting declarations from current and former store managers who provided that they were either instructed to perform work off the clock or that their supervisors were aware they were performing work off the clock).

"Courts have routinely authorized notice to putative class members on far more modest records than present in this case." *Lynch*, 491 F. Supp. 2d at 369-70 (finding that plaintiffs satisfied the "similarly situated" standard when the complaint, Fed. R. Civ. P. 30(b)(6) deposition testimony, and declarations from three opt-in plaintiffs showed that putative class members were subject to the same management structure, performed the same job duties, and had the same job descriptions and performance standards); *see also Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 64, 68 (E.D.N.Y. 2016) (granting conditional certification when plaintiff's declaration identified a common policy which caused an

14

alleged violation for similarly situated employees and an opt-in plaintiff submitted a declaration alleging "similar grievances"); *Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 264 (D. Conn. 2020) (holding that the low standard required for conditional certification was satisfied by two affidavits that referenced "personal observations and conversations with other individuals employed by" defendants and alleged that defendants maintained policies in violation of the FLSA).

Because Plaintiffs have made the modest showing required to demonstrate that they and the putative class members are similarly situated and have been subject to a common policy that allegedly violated the FLSA, conditional certification is GRANTED.

## E.      Whether Company-Wide Conditional Certification is Appropriate.

Casella argues that Plaintiffs' request for company-wide certification is excessively broad and asks the court to narrow the class to the locations where Plaintiffs and declarants actually worked.

In *Morris v. Lettire Const. Corp.*, 896 F. Supp. 2d 265 (S.D.N.Y. 2012), the court considered a similar issue. There, the plaintiffs were former foremen and laborers for defendant at one or more of its construction sites in the tri-state area. They alleged that defendants failed to pay them overtime compensation for work in excess of forty hours per week in violation of the FLSA and New York state law and that this policy was company-wide. The defendant opposed conditional certification on the basis that the proposed class was too broad because it included foremen and laborers at sites where the plaintiffs had not worked. Rejecting this argument, the court found that the plaintiffs satisfied their minimal burden because the defendant "centrally operate[d] and control[led] all of its construction sites, including those where no named plaintiff worked. In such circumstances, courts frequently authorize notice across all of the defendant's work sites." *Id.* at 271 (emphasis omitted). Other courts in the Second Circuit have reached similar conclusions. *See, e.g., Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (explaining that when plaintiffs seek conditional certification that includes employees at locations beyond plaintiffs' own job site, courts consider "whether the locations share common ownership or management"); *Capsolas v. Pasta Res., Inc.*,

2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (authorizing notice to all eight of defendants' restaurants, even though plaintiffs only worked at five, when they "share[d] common ownership" and were "administered by the same company").

In their SAC, Plaintiffs allege that Casella "operates through multiple affiliated and subsidiary entities that are owned and operated by the same core individuals and out of the same principal office." (Doc. 45 at 6, ¶ 28.) They assert that "Plaintiffs and the [p]utative [c]lass [m]embers are subjected to the same management through Casella, regardless of the name of the subsidiary entity on their paychecks[,]" *id.* at ¶ 29, and that "Casella maintains centralized control of all labor relations that impact Plaintiffs and the [p]utative [c]lass [m]embers and makes all determinations relevant to Plaintiffs and the [p]utative [c]lass [m]embers' employment." *Id.* at ¶ 30. In addition, "Casella and its subsidiaries . . . are subject to common ownership and financial control." *Id.* at ¶ 32. Although Plaintiffs have not provided declarations from current or former Casella employees in Connecticut, New Hampshire, or Pennsylvania, they submit declarations from employees at ten of Casella's fifty hauling locations.

"[C]ourts routinely grant conditional certification for employees of all locations owned by a defendant based on similar statements allegedly made by a manager or supervisor regarding a common unlawful policy or practice, without any further inquiry into its credibility." *Guzelgurgenli*, 883 F. Supp. 2d at 350; *see also LeGrand v. Educ. Mgmt. Corp.*, 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (granting conditional certification where three plaintiffs were "told by management that [assistant directors of admission] at defendants' [twenty] schools across the country also had to work over forty hours per week[] and were denied overtime") (internal quotation marks omitted) (first alteration in original). Plaintiffs have further demonstrated that there is no reason to limit conditional certification to only those states for which evidence has been submitted. Because Casella only operates in half a dozen states, nationwide certification is actually a de facto regional certification.

For the foregoing reasons, the court GRANTS Plaintiffs' motion for conditional certification of a collective action under the FLSA and conditionally certifies a class of

16

"all current and former Waste Disposal Drivers who worked for Casella Waste Systems, Inc., . . . in the United States, at any time from August 17, 2018 through the final disposition of this matter[.]" (Doc. 49 at 1) (internal quotation marks omitted.)

## III.    Opt-In Period and Reminder Notice.

Plaintiffs request that the court authorize a sixty-day opt-in period and a reminder notice to be sent halfway through that period. Casella does not object to these requests.

"Generally, 'courts have held that a sixty (60)-day period is sufficient for the return of Consent Forms[.]'" *Guzelgurgenli*, 883 F. Supp. 2d at 357 (quoting *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 85 (E.D.N.Y. 2008)); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011) (describing a sixty-day opt-in period as "consistent with FLSA practice").

The court therefore ORDERS potential class members to opt-in within sixty (60) days from the date Plaintiffs send the Notice and Consent Form to the potential class members. The court GRANTS Plaintiffs' request to send a reminder notice in light of the remedial purpose of the FLSA.[5]

## IV.    Deadline to Disclose Putative Class Members.

Plaintiffs request that Casella be ordered to produce a list of all putative class members including their "names, dates of employment, positions of employment, locations of employment, last-known mailing addresses, last-known cell phone numbers, and e[-]mail addresses" within either ten or fourteen days of an order granting conditional certification. (Docs. 49 at 2, 49-1 at 13.) Casella asserts a ten or fourteen day deadline is unreasonable and unduly burdensome. It requests forty-five days from the date of the court's Order approving conditional certification. Plaintiffs counter that forty-five days is "excessive" but they are "willing to agree to the significantly extended deadline if [the

---

[5] *See Chhab v. Darden Rests., Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (describing reminder notice as "intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in"); *Meo v. Lane Bryant, Inc.*, 2019 WL 5157024, at *13 (E.D.N.Y. Sept. 30, 2019) ("[T]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA.").

c]ourt will equitably toll the statute of limitations for that period, so that the claims of the" putative class members "will not suffer as a result of the delay." (Doc. 59 at 17.)

Courts ordering disclosure of putative class members have approved a variety of disclosure deadlines. *See, e.g.*, *Lynch*, 491 F. Supp. 2d at 371 (five days); *Hinckley v. Seagate Hosp. Grp., LLC*, 2016 WL 6524314, at \*17 (W.D.N.Y. Nov. 3, 2016) (twenty days); *Young*, 229 F.R.D. at 57 (twenty-one days); *Iglesias-Mendoza*, 239 F.R.D. at 370 (thirty days); *Lee*, 236 F.R.D. at 202 (thirty days). Here, a fourteen-day deadline fails to afford Casella sufficient time for compliance. The court finds thirty days is sufficient.

"Normally in a FLSA collective action, the statute of limitations for each plaintiff runs when he or she files written consent with the court electing to join the lawsuit, not when the named plaintiff files the complaint." *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012). Courts may, however, "equitably toll the limitations period in appropriate cases in order 'to avoid inequitable circumstances.'" *Id.* (quoting *Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963, at \*1 (E.D.N.Y. Mar. 8, 2011)). To toll the limitations period, the court must find: "(1) that extraordinary circumstances prevented the plaintiff from timely filing his or her claim, and (2) that the plaintiff pursued his or her claim with reasonable diligence during the requested period." *Alvarado v. Villas Mkt. Place Inc.*, 2020 WL 91489, at \*3 (S.D.N.Y. Jan. 8, 2020). "[T]he delay caused by the time required for a court to rule on a motion . . . for certification of a collective action in a FLSA case[] may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *McGlone*, 867 F. Supp. 2d at 445 (internal quotation marks omitted) (quoting *Yahraes*, 2011 WL 844963, at \*2). More commonly, equitable tolling may apply to a FLSA action "where the defendant has concealed the existence of a cause of action from the plaintiffs, and even then only if the plaintiffs had no actual notice of the right to bring an action." *Mark v. Gawker Media LLC*, 2014 WL 5557489, at \*2 (S.D.N.Y. Nov. 3, 2014).

Equitable tolling is not warranted at this juncture. Plaintiffs' motion for certification was ripe on October 5, 2022. There is no evidence that Casella concealed the cause of action, and Plaintiffs identify no extraordinary circumstances. In any event,

equitable tolling should not be the quid pro quo for a reasonable disclosure period unless it is otherwise warranted.

## V.    Proposed Notice and Consent Form.

Plaintiffs request that the court authorize sending their proposed notice and consent form to all putative class members "so as to provide them a meaningful opportunity to understand their rights and to join this litigation if they so choose." (Doc. 49-1 at 13.)

Casella argues that the content of Plaintiffs' proposed notice is defective because it is misleading and biased towards Plaintiffs' view of the case, inadequately states the court's neutrality, and requires putative class members to accept representation by Plaintiffs' counsel. Casella further argues that the proposed notice contains confusing opt-in information, directs putative class members not to contact Casella or the court, and does not address the issue of attorneys' fees and costs.

### A.    Whether the Proposed Notice Reflects Only Plaintiffs' Position.

Section 2 of Plaintiffs' proposed notice states: "Casella denies Plaintiffs' allegations. Casella contends that [] the Plaintiffs have been, and continue to be, properly paid under federal and state law." (Doc. 49-16 at 3.) According to Casella, this language "fails to present a full picture of Casella's position and defenses" because "Casella contends that most or all of the putative class members . . . fall within the MCA exemption and thus have no colorable claim under the FLSA." (Doc. 52 at 20.) Plaintiffs propose the following revision: "Casella denies Plaintiffs' allegations. Casella contends that [] the Plaintiffs have been, and continue to be, properly paid under federal and state law and are exempt from the overtime requirements of the FLSA because of the application of the Motor Carrier Act exemption." (Doc. 59 at 15) (internal quotation marks omitted.) The court agrees the proposed revision is sufficient to reflect both parties' positions in the case. *See Martin v. Sprint/united Mgmt. Co.*, 2016 WL 30334, at *17 (S.D.N.Y. Jan. 4, 2016) ("[C]ourts frequently direct plaintiffs to include a more expansive account of defendants' denials" than a mere statement that the defendants deny the plaintiffs' claims); *Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 1193836, at *5

(S.D.N.Y. Apr. 6, 2012) ("[P]roportionality [is] the key to assessing whether a proposed notice adequately captures the defendant's position.").

## B.     Whether the Proposed Notice Fails to Reflect the Court's Neutrality.

The proposed notice contains the following statement regarding the court's neutrality: "The [c]ourt has not decided who is right but has authorized this notice to inform you of your right to join this lawsuit." (Doc. 49-16 at 3.) Casella proposes it be revised to add: "The [c]ourt has not yet decided the merits of Plaintiffs' claims." (Doc. 52 at 21) (internal quotation marks omitted.) *See Martin*, 2016 WL 30334, at *17 (directing plaintiffs to amend their notice to include "an explicit statement that the [c]ourt has not yet made any determination on the merits of plaintiffs' claims"). Plaintiffs agree with this revision provided it is accompanied by a statement that "[t]he [c]ourt has authorized this notice to inform you of your right to join this lawsuit." (Doc. 59 at 15) (internal quotation marks omitted.) The court agrees with the parties' revisions and hereby ORDERS that both the notice and the reminder notice contain the following statement regarding the court's neutrality: "The court has not yet decided the merits of Plaintiffs' claims. The court has authorized this notice to inform you of your right to join this lawsuit. The court neither encourages nor discourages your participation in this case." *See Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, 2021 WL 4502479, at *10 (E.D.N.Y. Sept. 30, 2021) ("[T]he Reminder Notice should include a statement of the [c]ourt's neutrality in this case."); *Lora v. To-Rise, LLC*, 2017 WL 11604705, at *18 (E.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 11604704, at *2 (E.D.N.Y. Sept. 15, 2017) (approving reminder notice so long as it included the following language: "The [c]ourt has taken no position in this case regarding the merits of the [p]laintiffs' claims or of the [d]efendants' defenses. The [c]ourt does not encourage or discourage your participation in this case.").

## C.     Revisions to Section 7 of the Proposed Notice.

Plaintiffs' proposed notice states in part, "[i]f you complete and submit the enclosed Consent Form, you will be represented by the law firms of Anderson Alexander, PLLC and Larson & Gallivan Law, PLC. Their contact information is listed

below. . . . You should **not** contact Casella or the [c]ourt to discuss this matter." (Doc. 49-16 at 3-4.)

Casella asserts that the proposed notice improperly requires putative class members to accept representation by Plaintiffs' counsel in order to participate while comparatively directing putative class members not to contact Casella or the court and does not indicate to whom an opt-in notice without representation should be directed. Casella asserts that including contact information for counsel on both sides is routine, and there is no reason to instruct recipients not to contact Casella or the court. Finally, it argues that the proposed notice is misleading because it fails to address attorneys' fees and costs or to disclose putative class members' obligations if they joined the suit.

In response, Plaintiffs argue that including contact information for Casella's attorneys raises ethical concerns about communicating with unrepresented individuals. They propose the following revisions, which address opt-in plaintiffs' ability to choose their own counsel and inform them that Plaintiffs' attorneys are representing Plaintiffs on a contingency fee basis and will collect 40% of any unpaid wages and overtime pay that Plaintiffs and putative class members obtain in this lawsuit:

> If you choose to pursue your claims against Casella, you may choose to hire your own attorney, or you may agree to be represented by Plaintiffs' attorneys. If you complete and submit the enclosed Consent Form, you will be represented by the law firms of Anderson Alexander, PLLC and Larson & Gallivan Law, PLC. Their contact information is listed below.
>
> [Contact information]
>
> Plaintiff[]s['] attorneys are advancing the expenses of the litigation. They are representing the Plaintiffs on a contingency fee basis. No current or former Waste Disposal Driver who opts-in to the lawsuit will owe any attorneys' fees unless the Plaintiff[s] win[] the lawsuit.
>
> Plaintiff[s] and [their] attorneys have agreed to a total attorney fee of forty percent (40%) of the unpaid wages and overtime pay that Mechanics are entitled to as a result of the lawsuit. This percentage will be reduced by any award of attorneys' fees received from the [c]ourt.
>
> You should **not** contact Casella or the [c]ourt to discuss this matter.

(Doc. 59 at 16.)

"Courts frequently approve language clarifying that opt-in plaintiffs are 'not required to accept plaintiffs' counsel as their own.'" *Martin*, 2016 WL 30334, at *18 (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010)); *see also Morris*, 896 F. Supp. 2d at 274 (directing that the consent form "clearly indicate that opt-in plaintiffs[] have the right to select their own counsel"). As this court stated in *Forauer v. Vermont Country Store*, 2013 WL 3967932, at *8 (D. Vt. July 31, 2013), "it is appropriate to include the name and contact information for [defendant's] attorney, which will alert potential class members to any conflicts before those individuals opt-in." *But see Villamar v. Carrier Compliance Servs. Corp.*, 2022 WL 1650100, at *5 (S.D. Fla. Mar. 31, 2022) (denying defendant's request to include their contact information to recipients of the notice because of the "ethical dilemma that may flow from inclusion of defense counsel's contact information"). The notice should remind putative class members that Casella's counsel will not represent them. In the event putative class members contact Casella's counsel, it will be incumbent upon Casella's counsel to comply with V.R. Prof. Cond. 4.3.

Although it is common to direct the putative class not to contact the court with questions regarding the proposed notice,[6] the putative class, like any other member of the public, retains the right to contact the court. The court thus declines to approve a blanket statement discouraging contact with the court. It will, however, remind putative class members that court staff cannot provide legal advice.

With respect to returning consent forms, some courts in this Circuit have suggested that "the more common practice" is to return consent forms to the clerk of court "when a concern is raised by [d]efendants[.]" *Barron v. Casa Luis Corp.*, 2022 WL

---

[6] *See Wiliamson v. Back Forty LLC*, 2014 WL 12539361, at *7 (S.D.N.Y. June 25, 2014) (approving and modifying revised notice form, which states "[y]ou should not contact the [c]ourt with any questions"); *Mason v. Lumber Liquidators, Inc.*, 2019 WL 2088609, at *18 (E.D.N.Y. May 13, 2019) (approving and modifying revised notice form, which states, "please do not contact the court regarding this notice"); *Han v. Shang Noodle House, Inc.*, 2021 WL 3774186, at *18 (E.D.N.Y. Aug. 24, 2021) (approving court-authorized notice and consent form, which states, "[p]lease do not contact the [c]ourt about this notice other than if you choose to return to the [c]ourt the" notice form).

2467595, at *8 (E.D.N.Y. Jan. 21, 2022). "[T]his procedure avoids potential disputes regarding the timeliness of opt-ins and reinforces that opt-in plaintiffs may seek their own counsel and are not required to retain Plaintiffs' attorneys." *Jiao v. Shang Shang Qian Inc.*, 2021 WL 4356043, at *3 (E.D.N.Y. Sept. 24, 2021). Other courts have indicated that "[c]ourts in this Circuit are split on whether the opt-in plaintiffs should mail . . . consent forms to the named plaintiffs' counsel or to the [c]lerk of [c]ourt." *Matsu Corp.*, 424 F. Supp. 3d at 271; *see also Djurdjevich v. Flat Rater Movers, Ltd.*, 2019 WL 125888, at *2 (S.D.N.Y. Jan. 7, 2019) (allowing notice to putative plaintiffs to return consent forms to plaintiffs' counsel because plaintiffs' counsel is "in a better position to answer potential questions by putative members of the collective" and because "the notice states that a putative plaintiff need not retain [p]laintiff's counsel").

To strike the appropriate balance, the court accepts Casella's proposed revisions and requires the following additional revisions to Section 7:

> If you choose to pursue your claims against Casella, you may choose to hire your own attorney, or you may agree to be represented by Plaintiffs' attorneys. If you complete and submit the enclosed Consent Form to Plaintiffs' attorneys, you will be represented by the law firms of Anderson Alexander, PLLC and Larson & Gallivan Law, PLC. Their contact information is listed below.
>
> [Contact information]
>
> Plaintiffs' attorneys are advancing the expenses of the litigation. They are representing the Plaintiffs on a contingency fee basis. No current or former Waste Disposal Driver who opts-in to the lawsuit will owe any attorneys' fees unless Plaintiffs win this lawsuit.
>
> Plaintiffs and their attorneys have agreed to a total attorney fee of forty percent (40%) of the unpaid wages and overtime pay that Plaintiffs and class members are awarded as a result of the lawsuit. This percentage will be reduced if the court awards attorneys' fees to Plaintiffs. Costs shall remain the responsibility of Plaintiffs and the class members regardless of the outcome of this case.[7]

---

[7] While Plaintiffs "need not add detail regarding the specific costs and expenses that may be incurred in this litigation," it remains helpful "to add language adequately conveying how costs will be handled in the event of a judgment against [them]." *Hong v. Haiku @ WP Inc.*, 582 F.

If you choose to hire your own attorney, you may complete and submit the enclosed Consent Form and submit it to the Clerk of Court with the name and contact information for your attorney.

Casella is represented by the Dinse law firm in Burlington, Vermont. The Dinse law firm will not represent you in this action as it is representing the Defendant.

You may contact the court for copies of court documents but the court cannot provide you with legal advice.

## VI. Sending and Posting Notice.

Plaintiffs request that they be allowed to send notice via "U.S. mail, e[-]mail, text-message, and through posting the notice at all Casella work sites[] near the time clock." (Doc. 49-1 at 14.) They point out that Casella has a high turnover rate with its employees. Casella does not object to this request.

Courts in the Second Circuit "routinely approve e[-]mail distribution of notice and consent forms in FLSA cases" and have approved of "text message distribution where . . . the nature of the employer's business facilitated a high turnover rate[.]" *Martin*, 2016 WL 30334, at *19. For this reason, the court authorizes distribution of the notice and consent form via U.S. mail, e-mail, and text message.

District courts have further required a defendant to post the notice and consent forms at its worksites on the basis that potential class members will benefit from the posting of notice at their places of employment. *See Guzelgurgenli*, 883 F. Supp. 2d at 358-59; *see also Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) ("[The defendant] is hereby required to post continuous notice of this action and opt-in forms in a conspicuous location in each of its call centers during the ninety-day opt-in period referenced below. This method, along with the mailing of notices, strikes the appropriate balance between ensuring adequate notification, while also minimizing any disturbance to [the defendant's] workplace.").

---

Supp. 3d 117, 133 (S.D.N.Y. 2022) (quoting *Yi Mei Ke v. JR Sushi 2 Inc.*, 2021 WL 148751, at *13 (S.D.N.Y. Jan. 15, 2021)).

The court therefore ORDERS Casella to post notice of the collective action and the consent form at all Casella work sites for the entirety of the sixty (60)-day opt-in period.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' motion for conditional certification of a FLSA collective action and GRANTS IN PART AND DENIES IN PART Plaintiffs' motion to notify potential class members of the collective action. (Doc. 49.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 1 9th day of January, 2023.

Christina Reiss, District Judge
United States District Court