# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

| | | |
|---|---|---|
| **ROSEMARIE SIBLEY,** *et al.* | § | |
| **Individually and on behalf** | § | **Civil Action No. 2:21-CV-196-CR** |
| **of all others similarly situated,** | § | |
| | § | |
| *Plaintiffs*, | § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § | |
| | § | **COLLECTIVE ACTION** |
| **CASELLA WASTE SYSTEMS, INC.** | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| | § | |
| *Defendant.* | § | **FRCP 23 CLASS ACTION** |

## PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Rosemarie Sibley, Kenneth Messom, Kenneth Webb, and Anthony Corey, individually and on behalf of all others similarly situated ("Representative Plaintiffs"), respectfully move this Court to preliminarily certify the proposed Rule 23 Class identified herein for the purpose of settlement, preliminarily approve the Collective and Class Action Settlement Agreement ("Agreement") between the Parties, and set a fairness hearing to address the same. A copy of the Agreement is attached as Exhibit A to this Motion. Defendant Casella Waste Systems, Inc. ("Casella") does not oppose this Motion.

## I.    INTRODUCTION

This is a proposed collective and class action lawsuit for unpaid overtime wages brought by Representative Plaintiffs on behalf of themselves and all other similarly situated current and former Waste Disposal Drivers of Casella (collectively the "Parties"), who claim they were not properly compensated for all of the hours they worked. Representative Plaintiffs have alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, to recover their unpaid overtime compensation and statutorily prescribed penalties. In addition to their claims under the FLSA,

Plaintiffs further allege state-law claims for those current and former hourly employees who worked in Connecticut, Maine, Massachusetts, New Hampshire, New York, and Vermont.

As explained more fully below, the Parties have negotiated an Agreement that will resolve the claims of the Representative Plaintiffs, the Opt-In Plaintiffs, and the Collective/Class Members.[1] By this Unopposed Motion, Representative Plaintiffs are seeking certification, for settlement purposes only, of a settlement class pursuant to Federal Rule of Civil Procedure 23 and a settlement collective pursuant to 29 U.S.C. § 216(b). Specifically, Plaintiffs seek preliminary approval of a settlement class resolving their state-law claims as a class action, and the approval of a settlement collective resolving their federal claims as a collective action.[2] Because the Class and the Collective encompass many of the same individuals, each individual who is a member of both the Class and Collective will have the opportunity to participate in both, or one or the other if they so choose.

The total amount that Casella will pay pursuant to the Agreement is $6,250,000.00, inclusive of attorneys' fees, costs, expenses, court-approved enhancement awards for the Representative Plaintiffs, settlement administration fees and expenses, and payroll withholdings/taxes. Casella will tender this Maximum Settlement Amount to the Claims Administrator and will have no rights to reversion of any of the money pursuant to the terms of the Agreement.

The Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval under binding Second Circuit precedent.

## II.   ISSUES PRESENTED

By this Unopposed Motion, the Representative Plaintiffs ask the Court to: (1) preliminarily and conditionally certify (for settlement purposes only) a proposed settlement class pursuant to Rule

---

[1] "Collective/Class Members" is defined to include all persons who fall within the definitions of the Collective and/or the Class, combined. *See* Exhibit A, ¶ IV(6).

[2] The Final Approval Motion will seek Court approval for both the class action pursuant to Rule 23 and the collective action pursuant to 29 U.S.C. § 216(b).

23(e) of the Federal Rules of Civil Procedure related to state-law wage and hour claims; (2) conditionally (for settlement purposes only) certify a settlement collective under 29 U.S.C. 216(b); (3) appoint Austin Anderson and Clif Alexander of Anderson Alexander, PLLC as Collective/Class Counsel for the Collective/Class Members for settlement purposes only; (4) appoint Rosemarie Sibley, Kenneth Messom, Kenneth Webb, and Anthony Corey as Representative Plaintiffs for the Proposed Settlement Class and Collective; (5) approve the proposed Notice of Class and Collective Action Settlement and Consent Form, ("Notice") attached to the Agreement as Exhibits 1 and 2 and the notice plan as set forth in the Agreement; (6) set a date by which Plaintiffs must file a motion for final settlement approval and award of attorneys' fees, expenses, and/or costs; and (7) schedule the Fairness Hearing.

### III.    SUMMARY OF FACTS AND PROCEDURAL HISTORY

On August 18, 2021, Plaintiffs Rosemarie Sibley and Joseph Rodney, Jr. filed this action alleging that Casella violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Maine and Vermont state law by failing to pay them, and all other similarly situated employees, the correct amount of overtime for all hours worked in excess of 40 hours per week. ECF No. 1. On September 20, 2021, Casella moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (b)(1). ECF No. 12. On October 12, 2021, Plaintiffs filed their First Amended Collective/Class Action Complaint. ECF No. 17. Casella again moved to dismiss the amended complaint for a failure to state a claim. *See* ECF No. 21. Before Casella's motion to dismiss was decided, Plaintiffs moved to conditionally certify a collective action.[3] *See* ECF No. 29. On May 2, 2022, this Court held a hearing

---

[3] The Parties filed a motion to stay briefing on conditional certification until the motion to dismiss was resolved. ECF No. 32. The Court subsequently denied the motion as moot after granting Casella's motion to dismiss. *See* ECF No. 42.

on Casella's dismissal motion, and on July 15, 2022, the Court granted Casella's Motion to Dismiss, and provided Plaintiffs an opportunity to replead. *See* ECF No. 41.

Plaintiffs filed their Second Amended Class/Collective Action Complaint on August 4, 2022, including a Massachusetts state law claim and including the detailed allegations the Court determined necessary to state a claim. *See* ECF No. 45. Shortly thereafter, on August 17, 2022, Casella filed a Motion for Summary Judgment, and on August 31, 2022, Plaintiffs filed a renewed Motion for Conditional Certification. *See* ECF Nos. 48, 49. The Parties then agreed to a phased discovery plan wherein Plaintiffs would be provided the opportunity to conduct discovery on the issues raised in Casella's dispositive motion before filing their Response. *See* ECF No. 60. Plaintiffs served extensive discovery on Casella regarding its affirmative defense pursuant to the Motion Carrier Act.

On January 19, 2023, this Court granted Plaintiffs' Motion for Conditional Certification, and authorized the issuance of notice on a nation-wide basis. *See* ECF No. 65. The Parties conferred regarding the conditional certification order and determined to seek to stay the action (and notice) and engage in informal discovery in furtherance of reaching a resolution. Casella provided class-wide data regarding hours worked to Plaintiffs to enable them to meaningfully negotiate their claims. The Parties attended two formal mediations with D. Charles "Chuck" Stohler: the Parties appeared in-person in Burlington, Vermont, on April 14, 2023, and again via Zoom on June 20, 2023. By the close of the second mediation, the Parties reached an agreement, in principle, to resolve this matter on a class- and collective-wide basis. The Parties then worked collaboratively to draft the Agreement before this Court, which was executed on July 24, 2023.[4] By this Motion, the Representative Plaintiffs seek, and Defendant does not oppose, preliminary Court approval of the Agreement.

---

[4] To effectuate the Agreement, Plaintiffs filed a Third Amended Collective/Class Action Complaint removing Joseph Rodney, Jr., as a Representative Plaintiff, and adding Kenneth Messom and Anthony Corey as Representative Plaintiffs. *See* ECF No. 77.

# IV. SUMMARY OF SETTLEMENT TERMS

## A. The Settlement Fund

The Parties have agreed to settlement of this matter for the Maximum Settlement Amount of Six Million, Two Hundred and Fifty Thousand Dollars and No Cents ($6,250,000.00). Included in that amount is Collective/Class Counsel's attorneys' fees and out-of-pocket expenses, litigation costs, settlement administration fees and costs, payroll withholdings/taxes, and enhancement awards for the four (4) Representative Plaintiffs (not to exceed $2,500 each)—the remaining funds shall constitute the Net Settlement Amount. The Net Settlement Amount shall be further divided into the FLSA Settlement Fund and the State Settlement Fund, on a *pro rata* basis as determined by the proportionate number of Federal Qualifying Work Weeks and State Qualifying Work Weeks worked by each employee eligible to be included in the Collective/Class. Each of the Collective/Class Members are entitled to receive their *pro rata* share of the FLSA Settlement Fund and/or the State Law Settlement Fund based on their Work Weeks—a number unique to each Collective/Class Member calculated based on the number of weeks he or she worked during the Relevant Periods.

## B. Individuals Included in the Proposed Settlement Classes and Settlement Deadlines

The Parties have agreed that the proposed Class includes:

Any Waste Disposal Driver who worked for Casella Waste Systems, Inc., in Maine or New York at any point between August 18, 2015, and June 20, 2023, in New Hampshire or Massachusetts at any point between August 18, 2018, and June 20, 2023, or in Connecticut or Vermont at any point between August 18, 2019, and June 20, 2023, and who does not opt out of the settlement.

*See* Exhibit A, at ¶ IV(2).[5]

---

[5] Representative Plaintiffs note that the Class contemplated by the Agreement includes the state law claims of six (6) states based on the identical allegations that Casella failed to pay them for all hours worked as a result of an automatic meal break deduction of thirty (30) minutes per date, despite having actual or constructive knowledge that its Waste Disposal Drivers regularly worked through their meal periods. Representative Plaintiffs worked in four (4) of the six (6) states before the Court—Maine, Massachusetts, New York, and Vermont. Because the claims are the same, by state, differing only by the relevant statute of

The Parties have agreed that the proposed Collective includes:

Any Waste Disposal Drivers who worked for Casella Waste Systems, Inc., anywhere in the United States at any time from August 18, 2018, through June 20, 2023 **("Collective" or "Collective Members")**.

*See id.*, at ¶ IV(3).

## C. Settlement Allocation Formula

After calculating the total Net Settlement Amount (the amount remaining after deducting attorneys' fees, costs, expenses, enhancement awards, and administration fees and costs), it will be divided into the FLSA Settlement Fund and State Settlement Fund as described below. Each Representative Plaintiff, Settlement Collective Member and Settlement Class Member shall have the opportunity to receive their *pro rata* share of the respective Settlement Funds according to the following process.

Initially, the Claims Administrator will calculate the Preliminary Settlement Sums for both the Collective and Class for the purpose of notifying the Collective/Class Members of the amount of money available to them under the Settlement. While these numbers may increase depending on participation, they will not decrease. *See* Exhibit A, ¶ IV(42).

The Preliminary Settlement Sums are calculated as follows:

(1)     The Claims Administrator shall determine the total number of Federal Qualified Workweeks and State Qualified Workweeks[6] applicable to the Collective/Class as a whole.

(2)     The Preliminary FLSA Settlement Fund will be calculated by dividing the total Federal Work Weeks by the sum of the total Federal Work Weeks and the total State Work Weeks, and then multiplying the Net Settlement Amount by that number.

---

limitations, Representative Plaintiffs do not believe the lack of a representative from Connecticut or New Hampshire is detrimental to the approval of the Agreement before this Court.

[6] The State Qualified Workweeks include each week during the statute of limitation period as set forth in the Agreement for the state(s) in which the Class Member actively worked for Casella as Waste Disposal Driver. Ex. A, § IV(32).

(3)     Likewise, the Preliminary State Settlement Fund will be calculated by dividing the total State Work Weeks by the sum of the total Federal Work Weeks and the total State Work Weeks, and then multiplying the Net Settlement Amount by that number.

(4)     The Preliminary FLSA Settlement Sum Variable will provide a value for each Federal Qualified Work Week and will be determined by quotient of the initially offered FLSA Settlement Fund to Collective Members divided by the total number of Federal Qualifying Work Weeks for all employees eligible to opt in to the Collective, regardless of whether they actually become Settlement Collective Members. The FLSA Settlement Sum Variable, when multiplied by the total number of Federal Qualifying Work Weeks for each employee eligible to opt in to the Collective, will constitute the individual settlement amount initially allocated to the individual prospective Collective Member, or the Preliminary Federal Settlement Sum.

(5)     The Preliminary Class Settlement Sum Variable will provide a value for each State Qualified Work Week and will be determined by quotient of the initially offered State Settlement Fund to Class Members divided by the total number of State Qualifying Work Weeks for all prospective Class Members, regardless of whether they actually become Settlement Class Members. The State Settlement Sum Variable, when multiplied by the total number of State Qualifying Work Weeks for each Class Member, will constitute the individual settlement amount initially allocated to the individual Class Member, or the Preliminary State Settlement Sum.

*See id.*, § VI.

After the close of the 60-day Notice Period, the Claims Administrator will report as to how many eligible employees opted into the Collective, and as to how many prospective Class Members opted out of the Class. Upon final approval of the Agreement the Claims Administrator will recalculate the settlement funds to the participating Settlement Collective Members and Settlement Class Members to account for the actual participation in the Settlement. For example, if not all employees eligible to opt in to the Collective return their Consent Forms, then the Settlement Collective Members will receive a larger *pro rata* share of the FLSA Settlement Fund—likewise, if any Class Members opt out of the Settlement, the Settlement Class Members will receive a larger *pro rata* share of the State

Settlement Fund. *Id.* The process for reallocating the awards for the FLSA Settlement Fund and State

Settlement Fund is described below:[7]

      (6)      The Final FLSA Settlement Sum Variable will provide a value for each Federal Qualified Work Week and will be determined by the quotient of the FLSA Settlement Fund to Settlement Collective Members divided by the total number of Federal Qualifying Work Weeks for all participating Settlement Collective Members. The Final FLSA Settlement Sum Variable, when multiplied by the total number of Federal Qualifying Work Weeks for each participating Settlement Collective Member, will constitute the individual settlement amount finally allocated to each individual Settlement Collective Member, or the Final Federal Settlement Sum.

      (7)      The Final State Settlement Sum Variable will provide a value for each State Qualified Work Week and will be determined by quotient of the initially offered State Settlement Fund to Settlement Class Members divided by the total number of State Qualifying Work Weeks for all participating Settlement Class Members. The Final State Settlement Sum Variable, when multiplied by the total number of State Qualifying Work Weeks for each participating Settlement Class Member, will constitute the individual settlement amount finally allocated to each individual Settlement Class Member, or the Final State Settlement Sum.

*Id.*

Moreover, the Agreement sets forth that fifty percent (50%) of all payments constitute wages

and will accordingly be subject to W-2 reporting. *Id.* at § VIII(2). Withholdings and normal payroll

withholdings/taxes will be deducted pursuant to state, local, and federal law from this amount. The

Parties further agree that the remaining fifty percent (50%) constitutes payment for liquidated

damages, prejudgment interest, and penalties, and will be reported, where required by law, on an IRS

Form 1099. *See id.*

## D. Releases

Each employee eligible to be included in the Collective/Class will receive a Notice of

Settlement which will include a statement describing the difference between the class and collective

claims involved in this litigation, providing instruction for participating in the FLSA Settlement Fund

---

[7] The Federal Settlement Fund and the State Settlement Fund will not change. Instead the Settlement Sum Variables for the Settlement Collective and Settlement Class will be recalculated to account for only Settlement Collective and Settlement Class Member.

(and opting out of the State Settlement Fund), describing the offered Settlement Sums, and describing the scope of the applicable releases related to each Settlement Sum.[8]

In the event a Class Member does not opt-out of the State Settlement he or she will receive his or her allocated Final State Settlement Sum and will release the following claims:

> Any and all known or unknown claims under state and local wage and hour laws, including without limitation, all minimum wage and overtime violation claims of any type, liquidated damages, and any claims for any type of meal or rest break violations, inaccurate wage statements, any failure to pay wages timely during employment and at termination, unpaid vacation or sick pay or other paid time off wages of any type and related notice violations, unreimbursed business expenses, and derivative claims for unfair competition/business practices, statutory and civil penalties, interest, any claims under the theory of *quantum meruit* or breach of contract, and any other state or local law or theory related to the payment of wages or any other employment benefits against any or all of the Defendant Releasees,[9] and that accrued during a Class Member's employment, relating back to the fullest extent of all applicable state or local statutes of limitations and continuing through June 20, 2023. To the extent there are any statutory protections against any type of release, then Settlement Class Members shall be deemed to have waived any such protection to the fullest extent permitted by applicable law. ("Released State Claims").

Ex. A, § V. In the event an employee eligible to be included in the FLSA Collective returns his or her Consent Form, opting into the FLSA Settlement, he or she will release the following claims:

> Any and all known or unknown claims under the FLSA (29 U.S.C. §§ 201–19) that accrued during a Collective Member's employment during the Collective Period. ("Released Federal Claims").

*Id.* If an employee eligible to be included in the Collective fails to return a Consent Form, he or she will not be entitled to a recovery under the FLSA Settlement Fund and will not release his or her FLSA claims.

---

[8] Representative Plaintiffs entitled to an enhancement award shall also be subject to a full release of their claims against Casella.

[9] "Defendant Releasees" means Defendant and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

## E.    Enhancement Award

In return for the risk they incurred and the services they rendered to the Collective/Class Members, and as compensation for their general releases, subject to court approval, the Representative Plaintiffs will be paid Enhancement Awards of $2,500.00 each in addition to their proportionate shares of the FLSA Settlement Fund and the State Settlement Fund. *See id.*, § V(3).

## F.    Settlement Claims Administration

The parties will retain a third-party company to serve as the Claims Administrator.  The claim administration fee will be paid out of the Maximum Settlement Amount. *See id.*

The Claims Administrator shall be responsible for the following tasks:

(i) calculating the Preliminary Federal Settlement Sums and Preliminary State Settlement Sums to be offered to the Collective/Class Members; (ii) receiving the Collective/Class Members' contact information and updating their addresses to the most current available; (iii) mailing the Notice of Settlement documents required by this Agreement; (iv) receiving and logging the Consent Forms, opt out notifications, and any objections to the Class Settlement; (v) running up to one skip trace on undeliverable Notices of Settlement; (vi) reporting on the status of the administration of the Settlement to the Parties and providing the Parties necessary information; (vii) conferring with Collective/Class Counsel and Defendant's counsel to resolve any issues or disputes; (viii) preparing reports and preparing a declaration regarding its due diligence in the claims administration process; (ix) providing Defendant with copies of all executed Consent Forms; (x) recalculating the Final Federal Settlement Sums for the Settlement Collective and Final State Settlement Sums for the Settlement Class Members; (xi) setting up, administering, and making payments from the Qualified Settlement Fund ("QSF"); (xii) distributing Enhancement Award Payments to Representative Plaintiffs, (xiii) distributing the FLSA Settlement Fund to Settlement Collective Members and distributing State Settlement Fund to Settlement Class Members; (xiv) making required withholdings from the Settlement Funds paid to the Representative Plaintiffs, the Settlement Collective Members and the Settlement Class Members, and remitting any such withholdings to the appropriate authorities, and completing any associated reporting and filing requirements; (xv) determining the employer's share of payroll taxes, communicating such amounts to Defendant; and (xv) performing such additional duties as the Parties may mutually direct.

*See generally* Ex. A.

Within thirty (30) days of the Preliminary Effective Date,[10] Casella shall provide the Claims Administrator the Collective/Class Members' information necessary for it to (a) calculate the Preliminary Collective and Class Settlement Sums for each employee eligible to be included in the Collective or Class, and (b) effectuate the Notice as provided for in the Agreement. *See id.*, § VIII(1.1). Within twenty (20) days of receipt of the above-described information, the Claims Administrator shall calculate the Preliminary Federal and State Settlement Sums for each employee eligible to be included in the Collective or Class Member and issue their respective Notice of Settlement, including the Consent Form.[11] *Id.*, § VIII(1.2–1.3). The Notice of Settlement shall be delivered to each employee eligible to be included in the Collective or Class Members via First Class Mail, email, and/or text message within fifty (50) days of the Preliminary Effective Date. *Id.*

Each Notice recipient shall have a 60-day Notice Period to complete and return their Consent Form for participation in the Collective, to opt out of the Class, or, assuming they do not opt-out of the Class Settlement, to object to the terms of the Class Settlement.[12] Those recipients who return their Consent Forms shall be Settlement Collective Members and shall receive their Final Federal Settlement Sum by mail within fourteen (14) days after the Final Effective Date. Those Class Members who do not opt out of the settlement shall be Settlement Class Members and shall receive their Final State Settlement Sum by mail within fourteen (14) days after Final Effective Date. Both the Final State

---

[10] Preliminary Effective Date means the date on which the last of all of the following events have occurred, provided that each and every of the following events occurred: (i) counsel for Defendant is in physical receipt of a fully executed copy of the Settlement Agreement; (ii) Representative Plaintiffs have filed with the Court a Motion for Preliminary Approval, seeking permission to send Notice of Settlement to the Collective Members and Class Members; and (iii) the Court has entered an order granting such Motion, and approving the Notice of Settlement to be issued to the Collective Members/Class Members (including permission to send Notice of Settlement to Collective Members and Class Members via cellular phone numbers and via text messaging). *See* Exhibit A, ¶ IV(16).

[11] The Notice of Settlement and Consent Form are attached to the Agreement as Exhibits 1 and 2, respectively.

[12] To be considered timely, the Opt-In Consent Form must be received or postmarked on or before the close of the 60-day Notice Period. *See* Exhibit A, § VIII(1.4).

Settlement Sum and the Final Federal Settlement Sum can be mailed together in one mailing. In the event a Collective/Class Member both returns their Consent Form and does not opt out of the Class, they shall be both a Settlement Collective Member and a Settlement Class Member and receive a check from both the FLSA Settlement Fund and the State Settlement Fund.

Collective/Class Counsel shall have the ability to communicate with employees eligible to be included in the Collective or Class to (a) confirm they received their Notice of Settlement, (b) answer any questions about the Litigation, the Agreement, the Consent Form, or opting-out of the State Settlement, and (c) provide support to aid the Notice recipients to evaluate their options under the Settlement. These communications may be by phone call, text message, or email, are Court-approved communications, and shall not be considered as solicitations or a violation of any other law.

## G.     Proposed Notice

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e). The proposed Notice notifies potential Collective/Class Members of this collective/class action and the pending FLSA and state law claims. The Notice is designed to inform the potential Collective/Class Members of the substantive terms of the proposed Agreement, their rights, how to opt in to the FLSA collective action, and how to exclude themselves from, or object to, the Rule 23 class. Additionally, the proposed Notice will be individualized in that each potential Collective/Class Member will receive the exact proposed amount of his/her minimum recovery under the proposed settlement for each of their FLSA and state law claims, respectively.

The Parties propose the proposed Notice, where feasible, will be distributed via First Class Mail, email, and text message by the Claims Administrator. Utilizing three methods of notice dissemination provides the best practicable form of notice and provides the best opportunity that each

potential Collective/Class Member receives their Notice of Settlement such that they can choose whether to participate in the settlement of the FLSA Collective, the Rule 23 Class, both, or neither.

## E. Attorneys' Fees and Litigation Costs

Under the terms of the Agreement, subject to Court approval, the parties agree that Collective/Class Counsel will receive up to $2,100,000.00, in attorneys' fees along with their actual litigation expenses and costs, which together represent payment of all reasonable attorneys' fees, expenses, and costs associated with the lawsuit. Collective/Class Counsel will submit a Motion for Approval of Attorneys' Fees and Costs in conjunction with the Final Approval Motion, at a date to be set by this Court.

## V. ARGUMENT & AUTHORITIES

"The Federal Rules of Civil Procedure require that '[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.'" *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting FED. R. CIV. P. 23(e)). The Second Circuit has determined that court approval of FLSA settlements is also required. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). "The factors governing court approval of settlements under Rule 23 and the FLSA are similar." *Funkhouser v. City of Portsmouth, Virginia*, No. 2:13CV520, 2015 WL 12826461, at *1 (E.D. Va. Mar. 18, 2015) (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1319, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009)).

There are typically three stages applicable to the review of a proposed class action settlement. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary

determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to provide the notice of certification and proposed settlement to the class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634. Here, the Parties are at the first stage.

## A.     Preliminary Class Settlement Approval Process

Rule 23 is to be liberally construed. *In re Franklin Nat. Bank Sec. Litig.*, 574 F.2d 662, 672 (2d Cir.), on reh'g, 599 F.2d 1109 (2d Cir. 1978). Liberal construction "facilitate[es] the functioning of all features of the Rule together as a unit for the purpose of affording a flexible and effective means of disposing of substantial numbers of small claims while at the same time preserving and protecting the rights of non-litigating class members." *Id.*; *see also Healthplan Services, Inc. v. Gunnells*, 542 U.S. 915 (2004). When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. FED. R. CIV. P. 23(e). Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See id.* at 23(e)(2).

Federal courts generally find that preliminary approval of settlement and notice to the proposed class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011).

"Preliminary approval of a class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2014 WL 3900324, at *5 (D. Vt. July 9, 2014) (quoting *Menkes v. Stolt–Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010); *In re Traffic Exec. Ass'n–E. R.R.*, 627 F.2d 631, 634 (2d Cir.1980)).

While "the threshold for preliminary approval of a proposed class action settlement is meaningfully lower than the threshold for final approval," *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2012 WL 5989763, at *1 (E.D.N.Y. Oct. 24, 2012), the court must nonetheless "make 'a preliminary evaluation' as to whether the settlement" complies with Rule 23. *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)). "Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y .2009); *accord In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y.2005).

*Id.*; *see also* FED. R. CIV. P. 23(a)–(b). The Court must be provided with the necessary information to evaluate the fairness or adequacy of a proposed settlement. *See Chang v. Philips Bryant Park LLC*, No. 17CIV8816LTSSLC, 2019 WL 8105999, at *6 (S.D.N.Y. Oct. 23, 2019), report and recommendation adopted, No. 17-CV-8816-LTS-SLC, 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020). "To evaluate fairness, a court looks to both the settlement's terms as well as the process by which the parties negotiated it." *See id.* (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc.*, 396 F.3d at 116–17 (citing 4 NEWBERG § 11:41, at 87).

## B.    Rule 23's Requirements Are Satisfied by the Proposed Class Settlement

Plaintiffs seek class certification under Rule 23(b)(3). The certification requirements of Rule 23 generally apply even when certification is for settlement purposes.[13] *See Amchem Prods. Inc. v. Windsor*,

---

[13] The FLSA requires that the representative plaintiffs show that they are "similarly situated" to the putative collective members to obtain certification of a collective action. *See* 29 U.S.C. § 216(b). While "similarly situated" is not defined by statute, many courts have recognized that the class certification requirements of Rule 23 are more rigorous than those required by the FLSA. *See Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014) (recognizing that motions for conditional certification under the FLSA are not subject to the more rigorous Rule 23 certification analysis). Here, this Court has already determined that Plaintiffs are entitled to conditional certification, and Representative Plaintiffs note that a finding they are "similarly situated" is appropriate based on the Rule 23 factors discussed herein.

521 U.S. 591 (1997); *see also* FED. R. CIV. P. 23(b)(3). To be certified, the proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*See* FED. R. CIV. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3). However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974).

1.    The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a); *Chaney v. Vermont Bread Co.*, No. 2:21-CV-120, 2022 WL 3443973, at *4 (D. Vt. Aug. 17, 2022) (citing Fed. R. Civ. P. 23(a)(1); *accord Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015)). "In the Second Circuit, numerosity is typically presumed for a class of 40 or more plaintiffs." *Id.* (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011)). Here, the numerosity requirement is certainly met. The proposed class encompasses over 2,000 putative Class Members. Individual joinder would be impracticable—if not impossible. *See id.*

2.    The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement

Under the "commonality" requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure, the class members must have suffered the same purported injury. *Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 349–50 (2011). ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'") Commonality under Rule 23(a)(2) is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation. *Id.* at 350.

> Their claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* It is not necessary, however, that all of the questions of law or fact in a case be common to all putative class members, "[e]ven a single [common] question will do[.]" *Id.* at 359. "A showing of commonality requires the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation"—i.e., a showing that workers were not paid all promised wages when due. *See Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 71 (S.D.N.Y. 2022) (internal quotations omitted).

Here, the commonality requirement is satisfied because putative Collective/Class Members were subjected to the same alleged company-wide auto-deduction policy that Plaintiffs alleged caused them to engage in compensable services while off the clock, and without pay. As such, the success or failure of each putative Collective/Class Member's claim turns on the same common questions pertinent to the application of Casella's alleged policies to the Rule 23 Class—that is, whether Casella's auto-deduction policy required the Collective/Class Members to perform compensable services while off of the clock, in violation of the respective state laws, and if so, whether Casella's violations were willful, or in good faith.

3. The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter*

*R.R.*, 267 F.3d 147, 155 (2d Cir. 2001), abrogated on other grounds by *Wal-Mart Stores, Inc.*, 564 U.S. at 360; *see also Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279, 293 (S.D.N.Y. 2019) ("A named plaintiff's claim is typical under Rule 23(a)(3) if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." (internal quotation omitted)). "Some courts 'discuss the commonality and typicality requirements together,' but 'the commonality requirement tests the definition of the class itself, while the typicality requirement focuses on how the named plaintiff's claims compare to the claims of the other class members.'" *See Buffington*, 342 F.R.D. at 72 (internal citations omitted).

"[M]inor variations in the fact patterns underlying individual claims" do not preclude a finding of typicality "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 132 (S.D.N.Y. 2014). Representative Plaintiffs' claims meet this requirement, as they allege claims based on the same Casella policy to automatically deduct a 30-minute daily meal break despite knowledge Plaintiffs and the putative Class Members worked through their respective meal periods.

Here, Plaintiffs submit there are no factual distinctions between Representative Plaintiffs' claims and those of other class members:[14] Casella's policies and procedures governing its employees' meal periods applied equally to all putative class members. Representative Plaintiffs and the Collective/Class Members share the same legal interest in recovering their unpaid wages based on the

---

[14] For the purposes of this Motion and any Final Motion for Approval only, Casella does not dispute that Rule 23 requirements are satisfied to allow approval of this Settlement Class. However, if the Agreement is not approved or if the Agreement does not become final and is not executed, then Casella reserves the right to dispute that the Rule 23 prerequisites will have been met in any ongoing litigation.

same legal theory—that Casella's alleged failure to compensate Representative Plaintiffs and the Collective/Class Members for all compensable time worked (specifically including time spent working through their unpaid meals periods) was in violation of the respective state wage laws.

4. <u>The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation</u>

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To meet the adequacy requirement, "the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. A conflict between the Representative Plaintiffs and the Collective/Class Members "must be more than merely speculative or hypothetical[ ]" to defeat the adequacy requirement—instead, the "conflict must be fundamental." *Gunnells*, 348 F.3d at 430.

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met: (1) there is no conflict between the interests of the Representative Plaintiffs and the putative Collective/Class Members; and (2) Collective/Class Counsel are experienced in litigating complex hybrid class/collective actions like the one at issue. First, Representative Plaintiffs contend the following, (1) Representative Plaintiffs are typical of the class, so they will fairly and adequately represent the interests of the class; (2) there is no potential conflict between them and the other members of the proposed class because they are challenging pay policies that applied uniformly to all class members, regardless of the state in which the work was performed; and (3) Representative Plaintiffs' interests do not differ from those of the

class as a whole, in that they seek to benefit the proposed class by obtaining damages for all class members. Second, Collective/Class Counsel are experienced in this type of litigation, having litigated a substantial number of collective actions and/or class actions on behalf of waste disposal drivers across the United States, and have the resources to fully litigate this matter through trial on the merits, should such further litigation be required. *See* Declaration of Clif Alexander, attached hereto as Exhibit B.

> 5. The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. *See* FED. R. CIV. P. 23(b).

> i. *Predominance Under Rule 23(b)(3)*

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012)). Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all putative Collective/Class Members share a common set of core predominate facts and legal issues, including but not limited to:

1) All putative Collective/Class Members worked for Casella;

2) All putative Collective/Class Members were non-exempt employees;

3) All putative Collective/Class Members were paid via the same method;

4) All putative Collective/Class Members were subject to the same Employee Handbook;

5) All putative Collective/Class Members were subject to the same automatic meal period deduction;

6) Whether Collective/Class Members worked through their 30-minute meals periods;

7) Whether Casella violated the FLSA and state wage and hour laws when it allegedly failed to capture and pay for the time allegedly spent working through their meal periods;

8) Whether Casella was aware that its Waste Disposal Drivers allegedly regularly worked through their meal periods; and

9) Whether Casella willfully violated federal and/or state law.

The critical factual and legal issues are the same across the class and predominate over any other tangential issues.

    ii. *Superiority Under Rule 23(b)(3)*

The superiority element of Rule 23(b)(3) requires that the purported class action be superior to other available methods for the fair and efficient adjudication of the controversy. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130 ("Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery.") Rule 23(b)(3) identifies four factors relevant to the superiority inquiry:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3)(A)–(D).

Numerous courts have held class actions are superior in wage cases because of the threat of retaliation. *See, e.g., Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) ("Courts have considered risk of reprisal by an employer as weighing in favor of certification"); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior in employment context because, inter alia, "some class members may fear reprisal"). Indeed, one court has explained that fear of employer retaliation against individuals is "a very important concern" because "the nature

of the economic dependency involved in the employment relationship is inherently inhibiting." *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001); *see also Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 500 (D. Md. 2010) ("reluctance to sue one's employer may inhibit some potential claimants," therefore a "class action is well-suited to protect their rights").

Here, Representative Plaintiffs contend a class action is superior to other methods of adjudication. First, the objectives of this lawsuit—recovering unpaid overtime for all current and former hourly non-exempt employees within the maximum state statute of limitations period—can be fairly and efficiently achieved through the class resolution of this case. Second, the pertinent factors listed in Rule 23(b)(3)(A)–(D) point toward a class action being the superior method of adjudicating this case.

Under the 23(b)(3)(A) factors, none of the plaintiffs before this Court have expressed a desire to prosecute their claim individually. Notwithstanding the Representative Plaintiffs, approximately 34 Opt-In Plaintiffs have already joined this action and consented to abiding by the decisions of the Representative Plaintiffs. There is no reason to presume that any of the absent putative class members—none of whom have pursued overtime claims on their own—would desire to control the litigation of a separate case. It is more likely that the absent Class Members will consent to class resolution since each individual is slated to receive a settlement award in this matter.

The superiority factor in Rule 23(b)(3)(B) is likewise resolved in favor of class resolution because there are no other outstanding lawsuits against Casella based on the claims made herein such that resolving this matter on a class wide basis only promotes judicial efficiency.

The Rule 23(b)(3)(C) factor also demonstrates the superiority of this class action in this forum because Casella maintains its corporate headquarters within this District. This Court therefore has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum.

Accordingly, this particular forum is the most desirable and convenient forum, and superior to any other forum for this action to proceed.

Finally, and practically, a class action is superior here because the alternative method of adjudication requires holding thousands of separate trials. Class resolution achieves economies of time, effort, and expense, and promote uniformity of decision.

## C.    The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation

In determining a motion for preliminary approval of a class action settlement agreement the Court reviews the proposed settlement to make a preliminary fairness evaluation. *In Re Med. X-ray Film Antitrust Litig.*, No. CV-93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997). "Preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements." *Id.*

At the preliminary approval stage, a court must assess "whether it is 'likely' it will be able to finally approve the settlement after notice, an objection period, and a fairness hearing." *Soler v. Fresh Direct, LLC*, No. 20 CIV. 3431 (AT), 2023 WL 2492977, at *2 (S.D.N.Y. Mar. 14, 2023) (quoting 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:10 (6th ed.) (citation omitted)). To approve a proposed class action settlement, a court must find "that it is fair, reasonable, and adequate" after considering four factors: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. *Id.* (citing FED. R. CIV. P. 23(e)(2) & advisory committee's note to 2003 amendment).[15]

---

[15] Prior to the 2018 amendments to Rule 23, district courts in the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under the nine factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). The four new Rule 23 factors were not intended to displace the *Grinnell* factors, but to focus courts on the "core concerns of procedure and substance." *Soler*, 2023 WL 2492977, at *2 n.3 (citing FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

1.     <u>The Proposed Settlement is Fair</u>

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the Parties filed numerous contested motions, the Parties performed an exacting review of the relevant payroll data provided, and this case was mediated in multiple full-day mediations before nationally-recognized wage and hour mediator Chuck Stohler.

i.     *Adequacy of Representation*

Rule 23(e)(2)(A) requires a court to find that "the class representatives and class counsel have adequately represented the class" before preliminarily approving a settlement. *Soler*, 2023 WL 2492977, at *3. Determination of adequacy typically "entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Representative Plaintiffs do not have interests that are antagonistic to or at odds with those of putative class members. *See, e.g., Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012). Representative Plaintiffs' experiences were substantially the same as that of all other class members, and Representative Plaintiffs have the same interest in remedying Casella's underpayment of wages. Further, Collective/Class Counsel are qualified, experienced, and able to conduct the litigation. Anderson Alexander, PLLC did substantial work identifying, investigating, litigating, and settling Representative Plaintiffs' and the class members' claims, has years of experience prosecuting and settling hybrid collective/class action wage and hour litigation, and are well-versed in employment law and class action law. *See* Ex. B, at ¶¶ 4–9; *see, e.g.,*

*Campos v. Goode*, No. 10 Civ. 224, 2010 WL 5508100, at *2 (S.D.N.Y. Nov. 29, 2010). Therefore, the adequacy of representation factor weighs in favor of approval.

        ii        *Arm's Length Negotiations*

Rule 23(e)(2)(B) requires a court to consider procedural fairness and whether "the proposal was negotiated at arm's length." *Soler*, 2023 WL 2492977, at *3. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quotation marks and citation omitted)). "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness." *Id.* (quoting *In re GSE Bonds*, 414 F. Supp. 3d at 693).

This factor also weighs in favor of approval. The Parties engaged in two full-day mediations, over the course of three months, before experienced and respected mediator Chuck Stohler. Ex. B, at ¶ 12. The parties also engaged in meaningful discovery in advance of mediation: Casella produced class member data, including time and pay data, as well as data pertaining to its affirmative defenses. *Id.* ¶ 10. The Parties agreed to a resolution, in principle, at the close of the formal mediation and have continued to work together to fully finalize the Agreement before this Court. The Parties exchanged multiple drafts of the Agreement and held multiple further conferences to address settlement issues as they arose during the drafting process. *Id.* ¶ 12.

        iii.      *Adequacy of Relief*

Rule 23(e)(2)(C) requires a court to examine whether relief for the class is adequate, taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3)."[16] *Soler*, 2023 WL 2492977, at *4. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

a.    <u>The costs, risks, and delay of trial and appeal.</u>

First, the resolution of this matter would avoid significant costs, risks, and delay, ensuring timely relief for class members. *See* FED. R. CIV. P. 23(e)(2)(C)(i); *Grinnell*, 495 F.2d at 463 (factors include: "(1) the complexity, expense and likely duration of the litigation; . . . [and] (3) the stage of the proceedings and the amount of discovery completed"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). The parties have already engaged in substantial and meaningful discovery, *see* Ex. B, at ¶ 10, are well equipped to evaluate the strengths and weaknesses of their arguments, and "had an adequate appreciation of the merits of the case before negotiating[.]" *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation omitted). However, this case is also complex, with over 2,000 class members, and assessing liability and damages would require significantly more factual discovery, which would prolong litigation. If litigation were to continue, Casella would assert several fact-intensive defenses, including affirmative defenses under the Motor Carrier Act. Extensive briefing remains, including Plaintiffs' contested class certification motion and Casella's decertification motion. Likewise, both parties would urge dispositive motions. This case has been on file for almost two years and the length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time.

Further, Plaintiffs would encounter real risks to establishing liability, damages, and maintaining the class action through trial. *See Grinnell*, 495 F.2d at 463 (factors include: "(4) the risks of establishing

---

[16] There are no separate agreements required to be identified under Rule 23(e)(3).

liability; (5) the risks of establishing damages; [and] (6) the risks of maintaining the class action through the trial"). Plaintiffs' hybrid collective/class action involves many complex questions of law and fact, and estimating damages for each class member would be challenging and require expert testimony. Ex. B, at ¶ 11; *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361, 371–76 (1977). In order to prevail on their claims, Plaintiffs will be required to prove not only that they were performing compensable work off the clock, but also that they did so with Casella's knowledge, either actual or constructive. Some of the evidence proffered would involve "he said/she said" testimony of conversations between the Class Members and their Casella supervisors. Casella has not conceded liability. If this case does not settle, Casella will hotly contest liability and continue to assert its affirmative defenses. Likewise, should Casella prevail on its affirmative defense of good faith or the application of the Motor Carrier Act, the Collective/Class Member's available damages would be further limited. These uncertainties weigh in favor of the adequacy and certainty of the proposed settlement.

While Representative Plaintiffs have secured a robust settlement on behalf of the Collective/Class Members, it is possible they would face a zero recovery if they proceed through trial on the merits—and the potential appeal. As it stands, each Collective/Class Member is estimated to receive a potential combined Settlement Amount in the thousands, based on the *pro rata* distribution as outlined herein. The real financial benefit to them now, as opposed to some uncertain future amount, supports settlement approval.

     b.   <u>The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.</u>

Second, Plaintiffs' proposed method of distributing relief to the class is effective, *see* FED. R. CIV. P. 23(e)(2)(C)(ii), and would ensure "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund[.]" *In re Credit Default Swaps Antitrust Litig.*, No. 13 MD 2476, 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016). The Agreement

provides monetary compensation for every class member from a gross settlement fund of $6,250,000, which would amount to an average four-figure settlement per class member (which will likely be larger because the awards of any non-participating employee eligible to be included in the Collective and/or Class will be redistributed to the Collective/Class on a *pro rata* basis). To recover for their state-law class action claims, class members need take no action, and to recover their federal claims pursuant to the FLSA they must return their Consent Form, as required by 29 U.S.C. § 216(b).

The process is not onerous, and notice will be sent to the Collective/Class Members by mail, email, and text message. Because each Collective/Class Member is a current or former employee of Casella, the Claims Administrator will have a database of addresses and contact information by which to ensure the applicable notices (and payments) reach their destination. Importantly, there will be no delay to the processing of the payment to the Settlement Collective/Class Members—indeed, the Settlement Awards will be issued within fourteen (14) days of receiving final approval of the Agreement. *See* Ex. A, § IV(36).

c. <u>The terms of any proposed award of attorney's fees, including timing of payment.</u>

Third, the proposed award of attorney's fees is not unreasonable. *See* FED. R. CIV. P. 23(e)(2)(C)(iii). Under the Agreement, Collective/Class Counsel will request Court approval for attorney's fees and litigation expenses in the amount of $2,100,000, or approximately one-third of the gross settlement amount. *See* Ex. A, § XI(3.2). Courts in this Circuit have approved similar attorney's fees of approximately one-third from class settlement funds, which is "well within the applicable range of reasonable percentage fund awards." *See Soler*, 2023 WL 2492977, at *4; *In re DDAPV Direct Purchaser Antitrust Litig.*, No. 05 Civ. 2237, 2011 WL 12627961, at *4 (S.D.N.Y. Nov. 28, 2011). Therefore, Collective/Class Counsel's request for an award of approximately one-third of the gross settlement amount will not weigh against preliminary approval. Nor will the timing of the payments. If the Agreement is approves, Collective/Class Counsel and the Settlement Collective/Class Member

will receive payment under the Agreement on the same day—fourteen days after approval. *See* Ex. A, §§ XI(3.3, 3.4).

      iv.      <u>Equitableness of treatment of class members.</u>

The Collective/Class Members are all treated equitably under the Agreement. Each of them is set to recover the maximum amount of time in their recoverable window, based on a *pro rata* distribution. As explained above, the *pro rata* distribution is based on the number of weeks worked for Casella during the respective time periods. Thus, all Collective/Class Members are treated fairly regarding the distribution of the settlement funds.

Representative Plaintiffs have established that the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This Court will be able to make a final determination as to whether the Agreement is fair, reasonable, and adequate when deciding whether to issue a final approval of the Agreement, based on a full record and after the conclusion of the Notice Period.

## VI.
## CONCLUSION

Wherefore the Representative Plaintiffs request that the Court preliminarily approve the Agreement and enter the Proposed Order provided as an attachment to this Motion.

Date:   August 7, 2023

Respectfully submitted,

**LARSON & GALLIVAN LAW, PLC**

By:      /s/ *Tristan Christopher Larson*

**Tristan Christopher Larson, Esq.**
128 Merchants Row, Suite 405
Rutland, Vermont 05701
Telephone: (802) 779-9771
Email: larson@larsongallivan.com

**ANDERSON ALEXANDER, PLLC**

By:      /s/ *Clif Alexander*

**Clif Alexander** (admitted *pro hac vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (admitted *pro hac vice*)
Texas Bar No. 24045189
austin@a2xlaw.com
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys for Plaintiffs and the Putative
Class Members***

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendant's Counsel of Record and Defendant is not opposed to the filing of this motion or the relief requested herein.

/s/ Tristan Christopher Larson
Tristan Christopher Larson, Esq.


## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Vermont, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Clif Alexander
Clif Alexander